[No. 1953.    August 27, 1917.]

## STATE v. RODRIGUEZ.

[Rehearing Denied September 15, 1917.]

### SYLLABUS BY THE COURT.

1.  Where a juror had an opinion as to defendant's guilt,

which he had formed from public rumor as to what the facts in the case purported to be, but he unequivocally stated that he could and would lay aside his opinion and try defendant impartially on the evidence, he was a competent juror.

P. 163

2.  No party can acquire a vested right to have a particular member of the panel sit upon the trial of his cause until he has been accepted and sworn. It is enough that it appear that his cause has been tried by an impartial jury. It is no ground of exception that, against his objection, a juror was rejected by the court upon insufficient grounds, unless, through rejecting qualified persons, the necessity of accepting others not qualified has been purposely created.    P. 164

3.  There was no error in admitting a portion of the skull of the deceased, where properly identified, for the purpose of illustrating the nature of the wound.    P. 166

4.  The scope and right of the cross-examination are generally limited to subjects upon which the witness has been interrogated on direct examination.    P. 168

5.  The trial judge may at his discretion permit a witness

to be recalled, in order to be re-examined by the party recalling him.                                                                P. 170

6.  If the witness, upon cross-examination as to a former statement made by him relative to the subject-matter of the cause, and inconsistent with his present testimony, does not distinctly admit that he did make such statement, proof may be given that he did in fact make it; a proper predicate for the admission of such testimony having been laid.      P. 170

7.  The flight or concealment of the accused raises no presumption of law that he is guilty; but it is a fact which may be considered by the jury, and from which they may draw an inference in connection with other circumstances, and in the absence of an explanation of the reasons or motives which prompted it, that he is guilty; and evidence of flight or concealment is admissible, whether other evidence of guilt be direct or circumstantial.                                   P. 173

8.  Instructions to the jury are to be considered as a whole and where, so considered, they fully protect the defendant, he cannot complain.                                              P. 178

9.  It is well settled that, if the intent to take life is executed after deliberation and premeditation, thought but for a moment or an instant, the crime may be murder in the first degree.                                                       P. 178

10.  It is not error to refuse a requested instruction, even if correct in law, if the instructions given by the court on its own motion fully cover the law in the case.          P. 178

11.  When the judge has given in a charge the correct definition of reasonable doubt, it is not error to refuse to instruct the jury that it is incumbent upon the state to establish the guilt of the defendant of some offense embraced within the indictment, to the exclusion of every reasonable doubt in the mind of the jury, before a verdict of guilty can be returned, and that the minds of each and all of the jury must concur in the verdict, and, if any one of the jury has a reasonable doubt as to whether the defendant was justified or excused in what he did, the jury cannot convict.      P. 178

12. The doctrine of reasonable doubt is properly expressed by an instruction to the jury in the following language: "A reasonable doubt is such a doubt as would cause a reasonable and prudent man, in the graver and more important affairs of life, to pause and hesitate to act upon the truth of the matter charged. But a reasonable doubt is not a mere possibility of innocence, nor a caprice, shadow, or speculation as to innocence, not arising out of the evidence or the want of it. You should carefully weigh and consider the evidence, and bring to bear upon it the exercise of common sense and judgment as reasonable men, and if, after considering all the evidence, you can say that you have an abiding conviction of the truth of the charge, then you are satisfied beyond a reasnoable doubt."        P. 184

Appeal from District Court, Chaves County; McClure, Judge.

Juan Rodriguez was convicted of murder in the first degree, and he appeals. Affirmed.

R. D. Bowers and C. O. Thompson, both of Roswell, for appellant.

Juror with fixed, definite and unqualified opinion as to the guilt or innocence of defendant, or merits of case in civil action, such as will take evidence to remove, is disqualified, though he beieves he could 'try case on law and evidence.

State v. Riley, 78 Pac. 1001;
Turner v. State, 69 S. W. 744;
In Re Coughlin, 19 L. R. A. 57;
Sec. 14, Art. 2, State Const.;
Scribner v. State, 108 Pac. 426, 35 L. R. A. (N. S.) 985;
Togeler v. State, 130 Pac. 1169.

Court erred in rejecting a juror upon challenge for cause. Sec. 3087, Code 1915; 24 Cyc. 196; 24 Cyc. 217.

Evidence of escape of defendant during progress of trial was inadmissible because the killing was admitted and established.

Trapp v. Terr. 225 Fed. 986; 8 R. C. L. Sec. 188;
Williams v. State, 23 Am. R. 590;
Roscoe on Crim. Evid. 17;
People v. Ah Choy, 1 Idaho, 317;
6 Enc. Ev. 701; 12 Cyc. 397;
2 Wharton Cr. Ev. 1700, 1745, 1746.

Portion of skull was improperly admitted in evidence.

4 Enc. Ev. 275; State v. McKnight, 135 Pac. (N. M.) 82;
Flege v. State, 47 L. R. A. (N. S.) 1106;
McKay v. State, 39 L. R. A. (N. S.) 714.
Wharton's Crim. Ev. Vol. 2, Sec. —;
Christian v. State, 79 S. W. 562;
Cole v. State, 75 N. W. 521;
Patton v. State, (Ga.) 43 S. E. 533;
Follis ·v. State (Tex.) 101 S. W. 242;
State v. Nordall (Mont.) 99 Pac. 960·;
Sprouse v. Com. (Ky.) 116 S. W. 344;
(NG.) Marion v. State (Neb.) 29 N. W. 911;
Ausmus v. People (Cal.) 107 Pac. 204.

"Where improper evidence is admitted over objection, or where a question does not apparently call for improper evidence, but the answer contains evidence which is inadmissible or objectionable, as where it is not responsive, or is too much in detail, the proper practice is to move to strike it out and have the jury directed not to consider it."

12 Cyc. 564 (2) citing cases.

As to extent one may go in cross examination.
40 Cyc. 2480, 2777;
14 Enc. Ev. 629, 630, 631.

Court erred in permitting defendant to be recalled for a question by the State, after the case had been closed.

Shepard v. State, 59 N. W. 449.

Predicate must be laid for impeaching question.
Wharton's Cr. Ev. p. 997.

It is error to give misleading instructions.
38 Cyc. 1602.

Instructions should be confined to the issues presented
by the pleadings and the evidence.
38 Cyc. 1612 (4) citing:
Taylor v. McClintock, 112 S. W. 405;
Sargent v. Min. Co., 55 Cal. 204;
Meily v. Ry. Co., (Mo.) 114 S. W. 1013, and numerous
other cases cited.

## COMMENT.

If there need be no appreciable time between formation
of intent to kill and the act of killing, then an essential
element of murder is eliminated.
Wharton Cr. L. 151.
Court should have given tendered instruction on rea-
sonable doubt.
Harris v. State, (Ind.) 58 N. E. 57 (76);
Brickwood Sackett Inst. Vol. 2, p. 1729 (c);
Hale v. State, (Ala.) 26 So. 236 (237);
Mitchell v. State, (Ala.) 30 So. 348 (354);
Carter v. State, (Ala.) 15 So. 893;
Grimes v. State, 17 So. 184.

Harry S. Bowman, Assistant Attorney General, for the
State.
Where juror states he can lay aside his opinion and try
case fairly on law and evidence he is qualified.
Terr. v. Emilio, 14 N. M. 147;
Scribner v. State, 35 L. R. A. (N. S.) 1000, note.

The evidence relative to escape was admissible.
1 Wigmore on Ev. Sec. 276, 352, 353;
2 Whart. Cr. Ev. 1497;

State v. Rodriguez, 23 N. M. 156

Underhill Cr. Ev. 147;

· Part of skull of deceased, introduced in evidence, admissible.

2 Wigmore on Ev. 1354; State v. Powell, 61 Atl. 966; State v. Moore, 102 Pac. 475; State v. Weiners, 66 Mo. 13; State v. Moxley, 14 S. W. (Mo.) 969; Savary v. State, 87 N. W. 34; Tiner, v. State, 14 S. W. 838; Saunders v. tate, 111 Pac. 965; Thrawley v. State, (Ind.) 55 N. E. 95; Tiner v. State, (Ark.) 158 S. W. 1087; Roberts v. State, 123 Ga. 146, 51 S. E. 374.

It is discretionary with trial court to permit witness to be recalled for examination, and court reviews same only to determine whether discretion has been abused.
Hodges v. Hodges, 159 Pac. (N. M.) 1007.

Time when intent is formed to take life is not material.
Wasser v. State, 87 S. W. 635; State v. McPherson, 87 N. W. 421;

It is well settled that if the intent to take life is executed after deliberation and premeditation, though but for a moment or an instant, the crime mya be murder in the first degree.
Fahnestock v. State, 23 Ind. 231;
Howard v. State, (Tex.) 58 S. W. 77;
Robinson v. State, 71 Neb. 142, 98 N. W. 694.

Instruction on reasonable doubt given by court was approved in
State v. Perkins, 21 N. M. 135, 153 Pac. 258.

## STATEMENT OF FACTS.

The appellant, Juan Rodriguez, was indicted at the November, 1915, term of the district court of the county of Chaves, charged with murder of one Monroe Cartwright. Trial was had, resulting in a conviction of murder in the first degree and sentence of death imposed, from which

judgment appellant prosecutes this appeal. The facts, briefly stated, are as follows:

The deceased, Monroe Cartwright, with his daughter, Mrs. Nora Havens, and her two children, came to Roswell from their ranch on August 25, 1915, for the purpose of purchasing supplies. While in Roswell, the appellant, Juan Rodriguez, approached the deceased to apply for work. At a later hour in the day, the deceased employed the appellant, paying him some money, and all the parties referred to left Roswell late in the afternoon for the ranch. It appears from the evidence that the appellant had previously worked for the deceased as a sheep herder and camp cook. Th deceased was a man of about 67 years of age, whose eyesight had been failing for several years, and who was unable to drive a team or go about his business unaccompanied. The appellant was a young man, about 24 years of age.

After leaving Roswell, the parties drove some 12 or 13 miles and stopped for the night, camping out in the open. The appellant made down his bed apart from the others, but a short distance away. The deceased, with one of his grandchildren, made down a bed; and the daughter, Mrs. Havens, with her younger son, occupied a camp bed very close to the bed of her father and other son. According to the testimony of Mrs. Havens, she was awakened by a noise during the night, and saw the appellant standing at the head of her father's bed with a breast yoke in his hands and in the act of striking at the deceased; that she screamed, and the deceased awoke and started to arise, whereupon the appellant struck him a blow over the head with the breast yoke, felling him to the ground; that she ran to the place where her father was lying, picking up his head; and that while she was assisting her father, the appellant struck him again over the head with the same weapon. She further testified concerning the statement, made by appellant in Spanish, demanding that she come to his bed, and that with the help of her children she finally broke from the grasp of the appellant, who had laid hands upon her, gave him some money, and a pair of slippers, on condition that he go away; that he then

took the team and rode away. The testimony of the two children of Mrs. Havens is corroborative of hers in essential details.

The defendant testified that, when he met the deceased and Mrs. Havens in the wagon yard at Roswell on the morning of the day in question, she stated to him that he might come to her bed that night, and that during the course of the night he went over to the bed of Mrs. Havens, and that while sitting there, engaged in conversation with her, deceased got up and came toward him with a knife in his hand, and that while attempting to back away from the deceased he fell over the wagon tongue, and upon arising picked up the neck yoke and struck the deceased, in order to prevent him attacking him with the knife; that he struck him only one blow, whereupon the deceased fell to his knees, and that he did not strike him again; that he remained in the camp about 20 or 30 minutes, and that Mrs. Havens gave him some money and told him to go. He testified, further, that he had in his pocket two bottles of whisky, and that he had been drinking from these bottles, as well as imbibing at the saloons in Roswell, before he left with the deceased and his family. It appears, further, that during the course of the trial and before the jury was impaneled, the appellant, while being conducted from the courthouse to the jail by the sheriff, struck the sheriff, knocking him down, and made his escape, not being apprehended until two days later. Upon his return, the trial was resumed, resulting in the conviction of the defendant as indicated.

The deceased was brought to Roswell shortly after the injury was inflicted, and he died at 11 o'clock in the forenoon of the same day, from the result of the blow or blows administered by the appellant. Other facts will be referred to in the opinion.

OPINION OF THE COURT.

HANNA, C. J. (after stating the facts as above).

[1] The first three assignments of error are based upon the alleged erroneous action of the trial court in overruling the defendant's challenge for cause to the three

veniremen, Beers, Johnson, and Rice, each of whom was subsequently peremptorily challenged by the defendant. It is apparent from examination of the record that each of the veniremen admitted having formed an opinion regarding the merits of the case. The veniremen were carefully examined by counsel for the state and for defendant, and finally by the court. In response to questions by the court, each of the veniremen stated that he could lay aside the opinion formed from reading the newspaper articles and not allow the same to influence his verdict in any way, and that, if retained as a juror, he would base his verdict solely upon the evidence received from the witness stand and the instructions of the court. In the case of Territory v. Emilio, 14 N. M. 147, 89 Pac. 239, the territorial Supreme Court held, in an opinion by Mr. Justice Parker, that:

"Where a juror had an opinion as to defendant's guilt, which he had formed from public rumor as to what the facts in the case purported to be, but he unequivocally stated that he could and would law aside his opinion, and try defendant impartially on the evidence, he was a competent juror."

Measured by this principle, we conclude, after a careful examination of the record, that the three veniremen in question were competent jurors, and the assignments of error based upon the overruling of defendant's challenges for cause are therefore not well taken.

[2] The next assignment of error is directed to the ruling of the court in sustaining the challenge by the state for cause to venireman Powell. The record discloses that this venireman was subpoenaed on October 9, 1915, and that he did not reach the age of 21 years until October 27th following. The challenge was based upon the ground that, at the time of his selection and summoning as a juror, he was not within the quaification provided by Section 3087, Code 1915. Assuming that the trial court excused this juror without cause, nevertheless we do not consider that appellant has ground for complaint. In 1 Thompson on Trials, § 43, the author, after pointing to the fact that the right of peremptory challenge is a right to reject, and not a right to select, says:

"Therefore a party cannot, in, general complain that the court has excused jurors without cause, or sustained untenble challenges of the other party, thus driving the objecting party to exhaust his peremptory challenges upon other members of the panel, or upon special veniremen or talesmen."

See, also, 24 Cyc. 315; 16 R. C. L. 291.

Mr. Thompson, at section 120, more completely states the rule in the following language:

"No party can acquire a vested right to have a particular member of the panel sit upon the trial of his cause until he has been accepted and sworn. It is enough that it appear that his cause has been tried by an impartial jury. It is no ground of exception that, against his objection, a juror was rejected by the court upon insufficient grounds, unless through rejecting qualified persons, the necessity of accepting others not qualified has been purposely created."

We adopt this statement of the law, which is undoubtedly conclusive upon the assignment under consideration, in which, therefore, we find no merit.

The next assignment is that the court erred in admitting the evidence of the sheriff of Chaves county, C. R. Young, while testifying as a witness for the state, upon the subject of the defendant's escape from the custody of said witness. It is contended that the homicide had been conclusively proven, and the identity of the defendant, as the person who struck the blow resulting in the death of the deceased, had been established beyond a question; the only remaining question being whether or not the defendant was justified in striking the blow as to which the evidence of flight was wholly incompetent to go to the jury. The appellant relies in support of his position in this respect upon the case of Trapp v. Territory of New Mexico, decided by the Circuit Court of Appeals of the Eighth Circuit July 12, 1915, reversing a prior decision of our territorial Supreme Court. The Trapp case is reported in 225 Fed. 968, 141 C. C. A. 28. It appears that during the progress of the trial, while the jury was being impaneled, the defendant, while in the custody of the sheriff, and while on the way to the court house from the jail, escaped from the custody of the officer, remaining at large for two days, when he was recaptured. The facts pertaining to

this escape and flight were testified to by the sheriff, and, for the reasons stated, admission of this testimony is assigned as error. This assignment is not well taken, because, at the time the evidence in question was admitted, it was unknown what defense would be interposed, further than the statement of counsel for defendant that the defense would be one of self-defense. The court requested defendant to state whether he would admit that he struck the fatal blow. This he declined to do; therefore, at the time this testimony was offered and admitted, it was not known whether appellant would admit or deny striking the fatal blow. But regardless of this fact, the testimony was admissible, as will later appear. The objection, therefore, to the admissibility of the evidence, is not tenable. A more serious question, however, is presented in this connection with regard to the instruction of the trial court based upon this evidence, which will be considered later in this opinion.

The next assignment of error is based upon the refusal of the trial court to strike from the record the testimony of the witness Young relative to the escape and flight of the prisoner, and to instruct the jury to disregard the same. In view of our conclusion as to the admissibility of the evidence at the time offered, this assignment of error must necessarily be overruled. The motion in question was made at the conclusion of the testimony of the witness, and before the situation had changed from what it was at the time the testimony was offered and admitted.

[3]    It is next contended that the court erred in admitting in evidence over objection an exhibit identified by the witness for the state, Dr. Goodsell, as being a piece of bone from the skull of the deceased. It is contended that this exhibit was incompetent for any purpose, and was highly prejudicial to the defendant; that the homicide had been conclusively established, and that the nature and character and extent of the wound had been also fully proven, for which reason there was no material fact remaining concerning which the said exhibit could be honestly referred as demonstrative evidence. Appellant, in this con-

tention, however, loses sight of the fact that at the time
this evidence was introduced, while the state was mak-
ing its case, and before any evidence on behalf of the de-
fendant had been introduced, it was not known what ques-
tion would be raised concerning the cause of the death of
the deceased, and it was clearly incumbent on the state
to make its case. While the introduction of demonstrative
evidence is subject to abuse, and does not always serve a
useful purpose, we believe it is apparent from the record
in this case that this evidence was calculated to, and did,
explain the character of the wound, and the introduction
of the exhibit was justified under the circumstances at
the time it was offered. At the time in question the de-
fendant was admitting neither the location nor character
of the wound, and might well have been expected in his
own interest to possibly endeavor to show that some other
injury had been the cause of the death of the deceased. As
pointed out by Mr. Wigmore, in his work on Evidence, at
section 1157, the exhibition to the jury of the clothing or
mutilated members of the victim of the crime has often
been objected to on the ground of undue prejudice; but,
as indicated by this distinguished author, if the demon-
strative evidence is properly authenticated, the objection
that the defendant may be prejudiced should not be fatal.
The importance of such evidence for the purpose of dem-
onstrating the method and results of crime must not give
way to the possibility of prejudice. That evidence of this
class has frequently been held admissible is clearly demon
strated by the examination of the cases set out in the case
note to Self v. State, a Mississippi case reported in 90 Miss.
58, 43 South. 945, 12 L. R. A. (N. S.) 238. The case to
which the note is attached is said to be the only case,
with one exception, in which it has been held that the cir-
cumstances were such as to render such evidence inadmiss-
ible. Mr. Wharton, in his work on Criminal Evidence, at
section 518c, states the rule as follows:

"The authorities are abundant that tracks may be shown
about the scene of the crime, for comparison, identity, and
other purposes relevant to the issue; so parts of the deceased,
such as the skull, or jawbone, that may illustrate the nature

of the wound, and identify the assailant or the instrument, where that is essential."

We therefore conclude that there was no error in admitting a portion of the skull of the deceased, where properly identified, for the purpose of illustrating the nature of the wound.

[4] The appellant further assigns error in the action of the trial court in sustaining the objection of the district attorney to the question propounded to the witness, Dr. Goodsell, by counsel for the defendant, on cross-examination, to the effect of whether or not the wound, as described by the witness in his direct examination, could have been inflicted, while the deceased was lying on the ground with his face up, or almost directly up, from an overhanded blow with a breast yoke, held and swung by the defendant while standing about four feet to the west of the head of the deceased, while he was lying on the ground with his head in a southeasterly direction. The objection to this question was that it was not proper cross-examination. The defense contended that the witness had described the character and nature of the wound, and therefore it was proper to interrogate him as to the manner in which it might have been inflicted. It was suggested to counsel for the defense that they had the privilege of making the witness their own, if they desired to interrogate him upon the subject covered by the question. Examination of the evidence of this witness as a whole does not show any ground upon which the question can be justified as proper cross-examination. The state did not go into the question as to how the wound had been inflicted in examining this witness, further than to show that it had been inflicted by a blow with a blunt instrument. The defense did not elect to put this witness on at this time, or any subsequent time, as a witness for the defense, and evidently attached little or no importance to the opinion, or lack of it, of the witness in respect to the matter upon which they attempted to interrogate him. We fully appreciate the fact that great latitude should be allowed in cross-examination of the witnesses in capital cases, and that the court should seldom

interpose, except where there is clear abuse of the right. See Ritzman v. People, 110 Ill. 362. We are not unaware of the fact that as the cross-examination of the ordinary witness may often be to test his memory, observation, and bias, so in cross-examining one who takes the stand as a skilled witness, his judgment on germane matters may be tested by assuming premises and asking his conclusions. The question propounded to the witness was not for the purpose of testing his memory, observation, or bias, or for the purpose of inquiry as a test of his skill or his judgment. There was nothing in the direct evidence of the witness as to the position of the accused at the time the blow was struck, or the nature of the weapon used, and it is apparent from the record that this witness, who was not present, could not have known anything about these matters. Therefore the hypothetical question, addressed to him upon this subject, was not germane in any of the respects pointed out, and was therefore not improperly excluded. The general rule applicable to the right of cross-examination in criminal cases is thus stated by Underhill on Criminal Evidence, § 220:

"The scope and right of the cross-examination are generally limited to subjects upon which the witness has been interrogated on direct examination."

See, also, State v. Carter, 21 N. M. 166, 153 Pac. 271. This author, in the same section, further says:

"While counsel may cross-examine on relevant facts gone into on direct examination, he may not open his own case and present evidence to support it by cross-examining the adverse witnesses. If he wants their evidence, he must call upon them."

This rule, as we shall see, is qualified by the principle which permits seemingly irrelevant questions on cross-examination for the purpose of testing credibility and bias. Clearly the cross-examination here under consideration was not predicated upon the desire to show either bias or credibility, but to bring out new matter, not touched upon in direct examination, and to accomplish this counsel for the

---
---

defendant should have made the witness his own, and brought out the evidence, had he deemed it important.

[**5**]   The next charge is that error arose in permitting the state to recall the defendant as a witness.   It appears that, immediately after the witness was excused, the court said:   "The defense rests, I understand."   Counsel for defendant replied:   "Yes, sir."   Mr. Fullen, who was assisting the district attorney, immediately stated:   "We would like to recall the defendant for the purpose of propounding an impeaching question."   Counsel for the defendant then stated:   "The defense has rested and announced it."   To which Mr. Fullen replied:   "The state hadn't been advised they had rested, if the court please." The court ruled that the defendant might take the stand. We cannot agree that this was error, becasue it is generally held that the trial judge may at his discretion permit a witness to be recalled in order to be re-examined by the party recalling him.   1 Wharton's Criminal Evidence, § 494.   Also in 14 Encyc. of Evid. 630, this precise point is discussed in the following words:

"It is within the discretion of the court to allow a witness to be recalled for further, crossexamination, for the purpose of laying a foundation for his impeachment"—citing a number of authorities.

The same authority also points out that, when the accused takes the stand in his own behalf, he becomes a witness like all other witnesses, subject to all the rules of evidence.   14 Encyc. of Evid. 631.   Finding no abuse of discretion, this assignment of error is overruled.

[**6**]   It is next argued that, the defense having rested its case, the state, in recalling the defendant over his objection, made the defendant its own witness on the matters inquired into, and, having done so, may not be permitted to impeach its own witness.   The case of Perkins v. State, 78 Wis. 551, 47 N. W. 827, is almost precisely in point on this question.   In that case the witness had been cross-examined by the defense and excused from the witness stand.   The court declined to permit the witness to be recalled and re-examined, for the purpose of laying a predi-

cate for his impeachment, unless the defense would make the witness its own, and, when re-examined, the court ruled that the witness could not be impeached. This was held to be error; the Supreme Court holding:

"A witness of the opposite party may be recalled for further cross-examination touching statements made by him out of court, to lay the foundation for his contradiction by way of impeachment; and the party so recalling him should not be obliged to make the witness his own, and thus be deprived of the right to impeach him."

The record before us discloses that the following question was propounded to the defendant, after fixing the time and place:

"I will ask you to state if it is not a fact that on the 26th of August, 1915, the day of your arrest, a few hours after you were placed in the jail, you stated to Will Johnson, who asked you in Spanish in the presence of Harry Thorne and C. R. Young, sheriff, why you tried to get in bed with Mrs. Havens, to which you replied that you didn't know—that you was a little drunk. Did you make that statement at the time and place to the persons named, or in substance that statement?"

To which defendant replied:

"I don't know."

He was then asked:

"Now I will ask you to state whether it is a fact that at the same time and place, and in the presence of the same people and Mr. Will Johnson, acting as interpreter, if he didn't ask you why you struck and killed old man Cartwright, to which you replied, 'I don't know; I think I was a little drunk.' Did you make that statement at the time and place indicated, and in the presence of the persons named, or in substance did you make that statement?"

To which the defendant replied:

"I don't know."

With respect to the foregoing questions and answers of the defendant, it is contended that impeaching testimony was improperly admitted, because it does not appear that the witness denied directly or qualifiedly that he made the statement. Wharton's Crim. Evid. § 483, p. 997, and authorities there referred to, are cited in support of this contention. Appellant, however, overlooks the fact that

we have a statute upon the subject, which is section 2178, Code 1915, reading as follows:

"If a witness, upon cross-examination as to a former statement made by him relative to the subject-matter of the cause, and inconsistent with his present testimony, does not distinctly admit that he did make such statement, proof may be given that he did in fact make it, but before such proof can be given the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to the witness, and he must be asked whether or not he did make such statement."

It thus clearly appears that if the witness, upon cross-examination as to a former statement made by him relative to the subject-matter of the cause and inconsistent with his present testimony, does not distinctly admit that he did make such statement, proof may be given that he did in fact make it; a proper predicate for the admission of such testimony having been laid. See State v. Perkins, 21 N. M. 135, 153 Pac. 258. This seems to be a general rule, even in the absence of statute. 5 Jones, Com. on Evid. § 845, p. 204. And we think the matter was material.

The next two assignments of error may be treated together. It is first asserted that the rebuttal evidence of the witness Bertie Cartwright, relative to where a knife of the deceased was found after the homicide, was improperly admitted. Her testimony was that the knife was found in her father's shoe, with some other articles belonging to him, and that this knife was the only one which the deceased had, and had been given to him less than a week before this homicide by a brother of the witness. The second assignment, having to do with the admission of testimony in rebuttal by the witness Bozart, to the effect that he had found the shoes of the deceased near the bed occupied by him on the ground where the homicide took place, and in one of them he found a pocketknife, together with some other articles, being some tobacco and the pipe of the deceased. It is contended that the evidence of each of these witnesses is not proper rebuttal, and a motion was interposed to strike the testimony on this ground,

and for the further reason that it was not shown who put the knife in the shoe, or when it was put there, and whether it was in the same condition as when it was placed there.

This evidence, however, in each case was properly admitted, because proper rebuttal to the testimony of the defendant with respect to the alleged attack made upon him by the deceased with a pocket-knife. The defendant had testified as to the character of the knife with which the deceased committed the alleged assault, and that he had seen the knife in the possession of the deceased on a former occasion some two or three months previously; and the evidence of the witness to the effect that this was the only knife possessed by the deceased, and that it had been given to him but a week before, together with the circumstances as to its having been found in one of the shoes of the deceased, with other articles evidently placed in the shoe by the deceased before he retired on the night of the homicide, were material circumstances tending to disprove and contradict the testimony of the defendant as to the attack made upon him by the deceased with the pocket knife, which he attempted to describe—the evidence of these witnesses going to the extent of contradicting the statement of the defendant as to the character of the knife described by him. We therefore conclude that the evidence of each witness was proper rebuttal, and that there is no merit in these assignments of error.

[7] This brings us to the most serious matter involved in this appeal, which is based upon alleged error in giving instruction No. 23. This instruction, as given by the trial court, was as follows:

"You are instructed that evidence has been introduced before you concerning the escape of defendant from the custody of the sheriff of Chaves county, N. M., and his flight from said sheriff since the trial of this case began, and I charge you that if you find from the evidence that the defendant Juan Rodriguez, did escape and flee from the sheriff of said Chaves county while in his custody, and since the commencement of the trial of this case, you may consider this circumstance, in connection with all other facts and circumstances proved in the trial of the case, in determining the guilt or innocence of the defendant under the indictment in this case."

The objection to the foregoing instruction is as follows:

"Defendant excepts to instruction No. 23 for the reason that said instruction is erroneous, for the reason that it tells the jury that they may consider the evidence relative to the escape of the defendant from the custody of the sheriff in determining the guilt or innocence of the defendant, as charged by the indictment, for the reason that at this time the homicide had been admitted, and the identity of the defendant is unquestioned as being the person who struck the blow that resulted fatally, and such instruction is clearly in conflict with the holding of the United States Circuit Court of Appeals, Eighth Circuit, in Re Malcom Trapp v. Territory of New Mexico, 225 Fed. 968, 141 C. C. A. 28, wherein the court held that evidence of flight has no tendency to prove whether the homicide is justifiable, where the homicide has been proven or admitted, and where there is no question as to the identity of the defendant being the party that committed the homicide, which instruction is contrary to the settled law on that point and prejudicial to the defendant."

While the Trapp Case apparently supports the contention of the appellant that where the killing is admitted and established, and the only question is whether it was justified, evidence of the flight of the defendant is irrelevant, we cannot agree that this holding is in line with the great weight of authority. Furthermore, it is apparent, from a careful reading of the opinion in the Trapp Case, that the Circuit Court of Appeals attached considerable importance to the fact that the instruction was erroneous upon another ground. It was pointed out that flight to avoid arrest and trial on the charge of crime is evidence of the identity of the person charged with being the perpetrator, when that question is in doubt, but that there was no evidence of such flight in the Trapp Case; the evidence being that the flight was prompted by a fear of mob violence, and that Trapp went directly to his attorney, telling him what had happened, and that he desired to give himself up, that the attorney immediately telephoned to the jailer or sheriff to come to his office, where Trapp at once surrendered himself and was placed in jail. In the opinion of the Circuit Court of Appeals, this state of facts was evidently considered as negativing the element of flight in its ordinary meaning, and on this ground the case referred to may possibly be distinguished. The Cir-

cuit Court of Appeals cited no authority in support of its views upon either phase of the question, and, as we are not bound by the holding in that case we are not disposed to follow it.

Appellant, in support of his position, also directs our attention to the case of In re People v. Ah Choy, 1 Idaho, 317, where the court said:

"In the examination of this case, we do not find that the question of guilt was in the least dependent upon evidence of flight, or that such evidence was given upon the trial to influence the jury to find the defendant guilty of the crime with which he stands charged. Such proof in a case like this, when the fact that the defendant struck the fatal blow is clear, indisputable, and undisputed, is useless. Evidence of flight by the defendant, who admits that he took the life of the deceased, cannot be resorted to for the purpose of fixing the crime, or the grade of the crime. Such evidence may very properly be resorted to for the purpose of determining who did the act; but when the evidence of striking the blow is positive, admitted by the defendant and his counsel, evidence that he immediately ran from the place where he had taken the life of the deceased certainly could have no effect in the minds of the jury in determining the grade of the offense. Such evidence is only useful to unfold secrecy and point to the one who did the act."

Appellant also cites us to 8 R. C. L. 192, where, after stating the general rule that flight may be shown as a circumstance tending to indicate guilt, and may be considered by the jury with other circumstances tending to connect the defendant with the commission of the crime, to authorize the inference of the guilt of defendant, the corpus delicti being proven, it is said:

"This rule has been limited, however, to cases where the guilt of the defendant is sought to be established by circumstantial testimony."

The only authority cited in support of this statement is the case of Williams v. State, 43 Tex. 182, 23 Am. Rep. 590. The court in this Texas case supports its conclusion by reference to Roscoe on Crim. Evid. 17, and as supporting the opposing views cites Porter v. State, 2 Ind. (2 Cart.) 435; Whaley v. State, 11 Ga. 123; Dean v. Com., 4 Grat. (Va.) 541; Fanning v. State. 14 Mo. 386—question-

ing whether these authorities can be supported on principle. The general rule in this connection is thus stated in 2 Jones, Com. on Evid., 289:

> "Any indications which show or tend to show a consciousness of guilt by a person suspected or charged with crime or wrongdoing, who may after such indications be suspected or charged, are admissible evidence against him. Thus flight, living under an assumed name, attempt to escape, resistance to arrest, concealment, failure to appear for trial when under bonds, are all facts which may tend to show consciousness of guilt, and are in common practice received in evidence as relevant."

This statement of the general principle is suported by the citation of a large number of authorities, to which we only desire to briefly refer. One of the authorities cited is that of Allen v. United States, 164 U. S. 492, 17 Sup. Ct. 154, 41 L. Ed. 528. This case was submitted to the Supreme Court of the United States on two former occasions, and by reference to the earliest report of the case in 150 U. S. 552, 14 Sup Ct. 196, 37 L. Ed. 1179, it is found that the homicide was sought to be justified by the defendant, and grew out of an affray in the presence of witnesses, so that there could be no question, and was no question, as to the perpetrator of the offense. While it does not appear that any objection was made to the consideration of the element of flight in the case, where justification on the plea of self-defense was interposed, nevertheless the court recognized the rule that the flight of the accused is competnet evidence against him, as having a tendency to establish guilt, and held that an instruction to that effect was not error. The case was before the Supreme Court of the United States several times, and the contention now made by appellant in the present case was not at any time interposed.

A case closely analogous to the present one is also cited in support of the general rule above referred to, that of People v. Flannelly, 128 Cal. 83, 60 Pac. 670. The defendant in the case referred to was convicted of murder in the first degree, and rested his case upon the claim that the act was done in self-defense. The Supreme Court of California said in its opinion:

"The acts of defendant indicating flight after the killing, and also showing resistance to arrest by the peace officer, are clearly admissible. Such character of evidence has always been held admissible. Flight is a circumstance tending in some degree to show guilt, and so likewise is resistance to arrest. The law declares as a rule of evidence that it is more probable a guilty man will flee from the scene of crime than an innocent one, and that an innocent man is less liable to resist arrest than a guilty one. 'The conduct of a person charged with crime immediately after the commission is always the proper subject of inquiry. If he attempts to run away, or hide and evade the peace officer, it is a circumstance proper to go to the jury.' Rice, Ev. p. 503. And this rule is equally sound, even though the resistance to arrest is of such a kind as to amount to the commission of another crime. This character of evidence is introduced and admissible, as declared by some of the law writers, for the purpose of showing a guilty mind. Here it is clearly competent and admissible, as showing conduct inconsistent with the claims of defendant that he killed his father in self-defense."

The Supreme Court of Missouri, in the case of State v. Garrison, 147 Mo. 548, 49 S. W. 508, held that:

"No error was committed in refusing to strike out the testimony of the witness Dillingham to the effect that the defendant escaped from the jail of Platte county in September, 1897, athough defendant may have never denied the killing as claimed by him. The state was not restricted to any one mode or line of evidence in proving its case, and in so doing had the right to resort to any legal evidence at its command; and as flight by a person guilty of crime in order to avoid arrest always raises a presumption of guilt, such evidence was properly admitted for that purpose, notwithstanding his guilt might have been sufficiently proved by other evidence. State v. Marshall, 115 Mo. 383 (22 S. W. 452); State v. Brooks, 92 Mo. 542 (5 S. W. 257, 330); State v. King, 78 Mo. 555; State v. Walker, 98 Mo. 95 (9 S. W. 646, 11 S. W. 1133.)"

In 2 Chamberlayne's Mod. Law of Evid. 1773, it is said:

"Under the more rational system of later times, the fact of flight is merely a circumstance tending to establish consciousness of guilt."

See, also, Territory v. Lucero, 16 N. M. 652, 120 Pac. 304, 39 L. R. A. (N. S.) 58; Underhill on Crim. Evid. § 118; Blashfield's Instructions to Juries, § 277; 6 Encyc. of Evid. 701, 702; 2 Wharton's Crim. Evid. § 750.

The best statement of the principle governing the admission of evidence of flight which we have found, and which we adopt as a correct statement of the law, is to be found in 12 Cyc. 395, viz.:

"The flight or concealment of the accused raises no presumption of law that he is guilty, but it is a fact which may be considered by the jury, and from which they may draw an inference, in connection with other circumstances, and in the absence of an explanation of the reasons or motives which prompted it, that he is guilty, and evidence of flight or concealment is admissible, whether the other evidence of guilt be direct or circumstantial."

It is to be observed, upon examination of the authorities supporting this statement of the law, that the case of Williams v. State, 43 Tex. 182, 23 Am. Rep. 590, relied upon by appellant in this connection, was departed from in the case of Blake v. State, 3 Tex. App. 581.

[8-11] The next assignment of error is that the court erred in giving instruction No. 4. This instruction was as follows:

"The statutes of the state of New Mexico define murder in the first and second degrees as follows."

Then in the precise language of the statute the court defined murder in the first and second degrees. It is contended by appellant that the jury was misled by the instruction, as there was no necessity of including in the instruction elements of the crime of murder which were not included in the indictment. The only grounds upon which this assignment is presented are the alleged tendency of the instruction to mislead or confuse the jury and that the instruction should always be confined to the issue presented by the pleading and the evidence. Appellant cites 38 Cyc. 1602, 1612, in support of this contention; both principles of law, however, being well established. Neither contention of appellant, however, reaches the real question involved, which is, when the offense is statutory, whether the crime charged may be defined in the exact words of the statute. It has been held in several Texas cases that in reading the statute it is error for the court

to read that portion thereof which does not define the crime charged, but defines another distinct crime, unless he expressly limits the application of the statute to the charge in the indictment. See Jones v. State, 22 Tex. App. 680, 30 S. W. 478; Simons v. State (Tex. Cr. App.) 34 S. W. 619; Hargrave v. State (Tex. Cr. App.) 30 S. W. 444. Examination of these cases discloses that there is a question as to their applicability to the facts of the case at bar, by reason of the fact that only one crime is here involved, that of murder, although the statute covers different circumstances under which the crime may arise. Immediately after the crime was defined in instruction No. 4, the court proceeded to point out in instrction No. 5 what must be proven to the satisfaction of the jury, and beyond a reasonable doubt, to constitute the crime of murder. In instruction No. 6 the court continued in the following language:

"If you believe that each and all of the material allegations in the indictment of this case, as above outlined to you, have been established by the evidence to your satisfaction and beyond a reasonable doubt, then it will be your duty to find the defendant guilty of murder in the first degree as charged in the indictment."

It is therefore clearly apparent that the court limited its instruction upon the subject of murder to the allegations of the indictment, and even under the Texas rule, if it were to be applied in this case, there would be no error by reason of the fact that the instructions must be read as a whole. In the case of State v. Ellison, 19 N. M. 428, 144 Pac. 10, this court held in effect that instructions to the jury are to be considered as a whole, and when so considered they fully protect the defendant, he cannot complain. We therefore find no error in the giving of instruction No. 4.

The next alleged error presented for our consideration by the brief of appellant has to do with the court's instruction No. 11, or so much thereof as undertakes to define premeditated malice aforethought. In this connection the court said:

"Premeditated malice aforethought is where the intention to unlawfully take human life is deliberately formed in the mind, and that intention thought of before the fatal deed is done. There need be no appreciable space of time between the formation of the intention and the killing itself. It is only necessary that the act of killing be preceded by a concurrence of the will, deliberation, and premeditation on the part of the slayer."

The objection offered to this instruction by the defendant at the trial was that the definition was erroneous, in that it declared that there need be no appreciable space of time between the formation of the intent and the act. Appellant cites in support of this argument 1 Wharton's Criminal Law (11th Ed.) § 151, which is as follows:

"It is constantly laid down that the intent at the time of action is enough. It is not meant to assert by this that a person who, under a sudden impulse, kills another, is guilty of murder. To say this would be unwarranted, for the reason that we have no means of saying that a particular impulse is sudden. What we have a right, however, to say, and what the law means by this maxim to say, is this: That when a homicide is committed with weapons indicating design, then it is not necessary to prove that such design existed at any definite period before the fatal blow. From the very fact of a blow being struck we have a right to infer (as a presumption of fact, but not of law) that the blow was intended prior to the striking, although it may be at a period of time inappreciably distant."

We cite this section in full because it does not sustain the position of appellant, but does disclose that intent at the time of the act is considered sufficient, and that this intent may be presumed to exist from the very fact that the blow was struck with an intent existent prior to the act of striking, although for a period of time inappreciably distant. In State v. McPherson, 114 Iowa, 492, 87 N. W. 421, the court said:

"It is well settled that, if the intent to take life is executed after deliberation and premeditation, though but for a moment or an instant, the crime may be murder in the first degree."

See, also, Fahnestock v. State, 23 Ind. 231; Howard v. State (Tex. Cr. App.) 58 S. W. 77; Robinson v. State, 71 Neb. 142, 98 N. W. 694.

State v. Rodriguez, 23 N. M. 156

We agree with the rule of the Supreme Court of Iowa in the McPherson Case, and adopt it as a correct statement of the law applicable to this assignment of error.

It is argued that the court erred in refusing to give defendant's instruction No. 7 on the law relative to justifiable homicide. It is contended that the tendered instruction No. 7 should have been given, in lieu of instruction No. 18 given by the court, for the reason that the latter instruction ignored the provision of the law relative to justifiable homicide, to the effect that if there was reasonable ground to apprehend a design to take life or inflict bodily harm, and there being imminent danger of such design being accomplished, the killing is justifiable under the provisions of the statute defining justifiable homicide, and that the court wholly failed to define the law in said instruction No. 18. Appellant, however, in this contention overlooks the court's instruction No. 19, wherein the court said that a person who is attacked is entitled to judge of the danger to himself from the conditions and circumstances as then surrounding him, and if as a reasonable man he believes that he is then and there in danger of death or bodily harm, he is entitled to act upon the conditions and circumstances as they appear to him, the court further saying:

"It is not necessary that there be real or actual danger, but there must be such conditions and circumstances surrounding the defendant as would cause a reasonable man to believe in good faith that actual or apparent danger to life or body existed at the time."

The court also said in instruction No. 18:

"If you believe that the defendant, Juan Rodriguez, was assaulted by the deceased, Monroe Cartwright, and in such manner as to cause the defendant to believe, and he did believe, that he was in imminent danger of losing his life or suffering great bodily harm at the hands of the deceased, Monroe Cartwright, unless he killed him, and, while so believing, he killed the deceased, the defendant is entitled to invoke the law of self-defense."

Taking these two instructions together, and we have pointed out the instructions must be considered as a whole,

we do not believe the contention of appellant is well taken. The territorial Supreme Court held, in the case of Territory v. Pierce, 16 N. M. 10, 113 Pac. 591, that:

"It is not error to refuse a requested instruction, even if correct in law, if the instructions given by the court on its own motion fully cover the law of the case."

This holding has been followed in other cases not necessary to be cited, and is a well-established principle in this jurisdiction.

The next alleged error complained of is that the court improperly refused defendant's requested instruction No. 4, which was in the following language:

"It is incumbent upon the state to establish the guilt of the defendant of some offense embraced within the indictment, to the exclusion of every reasonable doubt in the minds of each of you, before you can return a verdict of guilty."

It is argued that it is reversible error upon the part of the trial court to refuse to give the foregoing instruction. This contention finds some support in authority. In Hale v. State, 122 Ala. 85, 26 South. 236, it was held to be reversible error to refuse an instruction similar to the one here requested. An examination of that case, however, discloses that the court apparently refused to give any instructions upon reasonable doubt, and in so far as the opinion of the court is concerned it does not appear that any instruction upon this subject was given. In an earlier Alabama Case, Lewis v. State, 121 Ala. 1, 25 South. 1017, a requested instruction that, unless each and every one of the jury is satisfied of the defendant's guilt to a moral certainty and beyond all reasonable doubt, they cannot convict him, and if they did convict him without each and every one of them being so satisfied, then they violated their oaths, is calculated to impress the mind of the juror with the idea that his verdict must be reached and adhered to without deliberation with his fellow jurors, and to forbid a juror to favor a verdict of guilty because another juror may have a reasonable doubt, for which reasons the requested instruction was held properly refused. In a

later Alabama decision, Mitchell v. State, 129 Ala. 23, 30 South. 348, a homicide case, the judgment of conviction was reversed because the trial court refused to give a simliar instruction. This seems to be what is referred to as the "Alabama rule." In Cook v. State, 46 Fla. 20, 35 South. 665, also a homicide case, the defendant requested the following instruction, which was refused. The court, quoting the following instruction, said:

"'Before the jury can convict the defendant, the evidence must be so strong as to convince each juror of his guilt beyond a reasonable doubt; and if, after considering all the evidence, a single juror has a reasonable doubt as to the defendant's guilt, arising out of any part of the evidence, then the jury cannot convict him. This instruction seems to have been taken verbatim from Mitchell v. State, 129 Ala. 23, 30 South, 348, where it is approved. The first proposition of this instruction, that each juror must be convinced beyond a reasonable doubt, was considered in Barker v. State, 40 Fla. 178,, 24 South, 69. Decisions of the Supreme Courts of Iowa and Washington are cited to the effect that such an instruction need not be given. Decisions from Kansas and Indiana are citd to the effect that it is reversible error not to charge that if any one of the jury, after having considered all of the evidence in the case, and after consultation with his fellow jurymen, should entertain a reasonable doubt of the defendant's guilt, the jury could not find the defendant guilty. The Alabama rule is also referred to. But the court in this case held that, inasmuch as a proper charge on reasonable doubt had been given to the jury, there was no just ground for inference that error was committed, or any injury done the accused, by a refusal to give the further charge requested. In Davis v. State, 63 Ohio St. 173, 57 N. E. 1099, the trial court was requested to charge the jury that each juror must be convinced beyond a reasonable doubt of the guilt of the defendants, before uniting on a verdict of guilty. The court refused to give this charge, but did charge that the jury must be convinced beyond a reasonable doubt before finding the defendants guilty. The Supreme Court held that the proper instruction was given, and the charge asked for was properly refused. It says: 'The request, as asked, would seem to invite an acquittal, or at least a disagreement, and was therefore misleading. It is true that each juror must be convinced of the guilt of the defendant, before uniting on a verdict against him, and this is generally understood; but it is equally true that each should confer with his fellows, and listen to what they have to urge in weighing the evidence, whether it be for or against an acquittal, and not obstinately stand upon his own opinion, in the matter. The request asked and refused by the court would tend to such a result. * * * The verdict should be the intelligent consensus of the whole

jury, arrived at upon the evidence beyond a reasonable doubt. It should be addressed as an entity, and not as separate individuals. If the accused is in doubt as to whether the verdict is that of each juror, his remedy is to have it polled before it separates.' "

[12] We have quoted at large from the foregoing opinion, because it reviews all the decisions which we are able to find, or to which our attention has been directed, in support of the opposing views as to the propriety of the trial court's refusal to give a requested instruction similar to the one asked in this case. The reasoning of the opinion would seem clearly to negative a necessity for giving an instruction of this character where the court has given a charge correctly defining "reasonable doubt," and in the case at bar the court, by its instruction No. 25, correctly defined "reasonable doubt," using the following language:

"You are instructed that a reasonable doubt is such a doubt as would cause a reasonable and prudent man, in the graver and more important affairs of life, to pause and hesitate to act upon the truth of the matter charged. But a reasonable doubt is not a mere possibility of innocence, nor a caprice, shadow, or speculation as to the innocence, not arising out of the evidence or the want of it. You should carefully weigh and consider the evidence, and bring to bear upon it the exercise of common sense and judgment as reasonable men, and if, after considering all the evidence, you can say that you have an abiding conviction of the truth of the charge, then you are satisfied beyond a reasonable doubt."

Furthermore, it appears, from the several instructions of the trial court, that, after defining murder in the first and second degrees and manslaughter, the jury was instructed that, in order to find the defendant guilty of either, the state must prove to the jury's satisfaction and beyond a reasonable doubt the pertinent facts included within the definition of the crime. It would thus seem to be clear that the trial court had so thoroughly covered the matter that the jury could not have been misled, and we therefore conclude that, when the judge has given in a charge the correct definition of reasonable doubt, it is not error to refuse to instruct the jury that it is incumbent upon the state to establish the guilt of the defendant of some offense embraced within the indict-

ment, to the exclusion of every reasonable doubt in the mind of each of the jury, before a verdict of guilty can be returned, and that the minds of each and all of the jury must concur in the verdict, and, if any one of the jury has a reasonable doubt as to whether the defendant was justified or excused in what he did, the jury cannot convict.

It is argued that the court erred in refusing defendant's requested instruction No. 1 and giving in lieu thereof his instruction No. 12 on the subject of malice. It is contended that the instruction as given ignored the question that it is the unlawful use of the deadly weapon from which malice may be implied, and not the use of the deadly weapon, as a deadly weapon may be used in self-defense, but that it is the unlawful use only of such deadly weapon from which the law presumes malice. The requested instruction No. 1 was as follows:

"Malice may be implied from the unlawful use of a deadly weapon, not from the mere circumstance that a deadly weapon is used, because a man may use it in self-defense, but it is the unlawful use of the deadly weapon, whereby life is taken, from which the law presumes malice."

No authority is cited in support of appellant's position, but we find that the requested instruction was given in the case of State v. Foster, 66 S. C. 469, 45 S. E. 1, and in the case referred to the instruction was held to be a proper one. An examination of the opinion in this case, however, does not disclose that any other instruction upon the subject of malice was given, while in the case at bar it appears that the court properly instructed both as to express and implied malice in instruction No. 11, and in instruction No. 12 more fully dealt with the subject in the following language:

"You are instructed that in case of homicide it is not always possible to prove express motive, nor is it always necessary that express malice be established by the evidence. Malice may be implied from the circumstances, acts, and language of the parties at the time of the killing, and from the means used to accomplish the homicide. The question of whether or not there was malice is to be determined by the jury, as any other material element in the case, beyond a reasonable doubt, and in deciding that issue you may

take into consideration all the facts and circumstances surrounding the case, the language and acts of the defendant, if any, the means by which the homicide was committed, and any other fact and circumstance which, in your opinion, throws light upon the question of malice."

We believe, therefore, that the instruction fully covered the question of malice, and that no prejudice arose of which the appellant can be heard to complain. This question is fully dealt with in 2 Wharton's Crim. Evid. § 764. As we have already pointed out in this opinion, where the charges as given are correct, it is not error to refuse an instruction upon the same subject, even though the refused instruction correctly states the law. Aside from this, we do not believe that appellant's objection is well taken. While it is true that the court said that malice may be implied from the circumstances, acts, and language of the parties at the time of the killing, and from the means used to accomplish the homicide, the court further said, in its instruction No. 11, that malice is implied when the killing is done without any considerable provocation, or when all the circumstances of the killing show a wicked and malignant heart. It would be hardly fair to permit the appellant to carve out one statement from an instruction, and predicate an assumption upon it which the instruction or instructions as a whole do not justify. We find no error in this assignment.

It is last urged by the appellant that the court erred in refusing defendant's requested instruction No. 6, and in giving in lieu thereof its instruction No. 25, for the reason that the requested instruction is a full and complete declaration of the law on the subject of reasonable doubt and the given instruction incorrect, in that the court said:

"You are instructed that a reasonable doubt is such a doubt as would cause a reasonable and prudent man, in the graver and more important affairs of life, to pause and hesitate to act upon the truth of the matter charged."

—whereas, the law is that a reasonable doubt is such a doubt as would cause a reasonable and prudent man to pause and hesitate to act upon the more important and graver things pertaining to his own affairs, and not upon

the truth of the matter charged.

A further objection to the instruction is urged, which we deem it unnecessary to particularly refer to. Upon comparison of instruction No. 25, as given by the court, with the instruction approved in the case of State v. Perkins, 21 N. M. 135, 153 Pac. 258, we find that the approved instruction in the Perkins Case is in the identical language of instruction No. 25 given by the court. This instruction, therefore, having heretofore received our approval, we conclude that the court was not in error in giving the instruction complained of.

The judgment of the trial court is therefore affirmed; and it is so ordered.

PARKER and ROBERTS, JJ., concur.