2 P.3d 878

2000-NMCA-046

STATE of New Mexico,
Plaintiff–Appellee,

v.

Remigio Pena MORALES,
Defendant–Appellant.

No. 19,989.

Court of Appeals of New Mexico.

April 6, 2000.

Certiorari Denied, No. 26,306,
May 24, 2000.

Patricia A. Madrid, Attorney General, Max Shepherd, Assistant Attorney General, Albuquerque, for Appellee.

Phyllis H. Subin, Chief Public Defender, Carolyn R. Glick, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

WECHSLER, Judge.

{1} Defendant was convicted of two counts of forgery and appeals the district court's judgment and sentence. He argues that: (1) the State failed to prove with substantial evidence the knowledge and intent elements of forgery; (2) the trial court erred in admitting into evidence prior statements of Defendant's mother for impeachment purposes; (3) the trial court erred in refusing Defendant's requested jury instruction concerning mistake of fact; and (4) cumulative error deprived him of a fair trial. We affirm.

### Facts and Procedural History

{2} On December 1, 1996, Defendant cashed a check in the amount of $45 at Albertson's. The check was drawn on the account of Esther Peña, Defendant's mother,

and was ostensibly signed by Ms. Peña. Western Commerce Bank returned the check to Albertson's advising that the account had been closed. The account was closed September 4, 1992. Albertson's posted the returned check which had the notation "Account Closed" on its face in its customer service area. On December 3, 1996, when Defendant sought to cash a second check at Albertson's on the same account, the grocery manager, Thomas Ellis, would not approve the check for cashing. According to Mr. Ellis' testimony, he asked Defendant for identification and ultimately called the bank to confirm that the account was closed. Mr. Ellis instructed a clerk to call the police. When Defendant learned that the police had been called, he asked Mr. Ellis to return his identification and ran out of the store. Another Albertson's employee testified that Defendant ran when Mr. Ellis asked Defendant to go to a back room and sought to take hold of Defendant. Mr. Ellis did not return Defendant's identification.

{3} Mr. Ellis testified that he observed Defendant as Defendant fled from the store. According to Mr. Ellis, Defendant ran away from the store at a "dead run," pursued by Mr. Ellis, crossed two streets, and ran down an alley located behind a store. Mr. Ellis further testified that he saw Defendant dive into the passenger side window of a waiting car which then drove off.

{4} Ms. Peña testified as part of the State's case. She stated during direct and cross-examination that she had authorized Defendant to sign checks when she had checking accounts. She had occasionally told Defendant to cash checks made payable to her by other persons and had mistakenly given Defendant permission to sign her name on those checks. At the time of the transactions with which Defendant is charged, she was not aware of which checks he was cashing and thought he was cashing third-party checks. She did not authorize Defendant to cash checks on a closed bank account, or tell him she had a closed account. She testified that she did not remember telling police officers that she had a telephone conversation with a grocery store employee whom she told that Defendant did not have authority to

cash her check. She also did not remember telling a police officer that she did not authorize Defendant to cash any of her checks.

*Sufficiency of the Evidence*

{5} Defendant contends that the State did not present sufficient evidence to prove that Defendant knew the two checks had false signatures or that Defendant had an intent to defraud. Both knowledge and intent are essential elements of forgery. *See* NMSA 1978, § 30–16–10(B) (1963). The trial court instructed the jury that the State had the obligation to prove beyond a reasonable doubt as to each count that "[D]efendant gave or delivered to Albertson's a check knowing it to have a false signature intending to injure, deceive or cheat Albertson's or another." We analyze Defendant's sufficiency of the evidence claim by inquiring whether there was substantial evidence of each of the elements of forgery for both checks to support a guilty verdict beyond a reasonable doubt. *See State v. Duran*, 107 N.M. 603, 605, 762 P.2d 890, 892 (1988). The evidence may be direct or circumstantial. *See id.*

{6} Defendant argues that the only evidence of knowledge or intent presented by the State was the evidence of his flight from the Albertson's store. Defendant does not dispute that he fled Albertson's when he learned that the police had been called. Rather, Defendant takes the position that the probative value of evidence of flight is so limited that it cannot provide substantial evidence of the forgeries in this case. In addition, Defendant offered an alternative reason for his flight: that he had failed to pay traffic tickets and complete community service.

{7} Evidence of flight is relevant evidence in a criminal case "because it tends to show consciousness of guilt." *State v. Smith*, 89 N.M. 777, 783, 558 P.2d 46, 52 (Ct.App.), *rev'd on other grounds*, 89 N.M. 770, 558 P.2d 39 (1976). Our appellate cases express concern with the probative value of evidence of flight as to knowledge and intent in the absence of other circumstances. *See State v. Rodriguez*, 23 N.M. 156, 178, 167 P. 426, 433 (1917) (holding that jury may draw an inference of guilt from flight or concealment if the evidence is offered in connection with other

circumstances); *State v. Kenny,* 112 N.M. 642, 646, 818 P.2d 420, 424 (Ct.App.1991) (stating that even cumulative evidence of flight is admissible to corroborate other evidence). In this case, flight is not the only circumstantial evidence of Defendant's knowledge and intent that constitutes substantial evidence to support the verdicts.

{8} First, Defendant's mother's testimony could have provided a basis for the jury to conclude that Defendant did not have the authority to sign the checks and knew that he lacked the authority. *See State v. Vigil,* 87 N.M. 345, 350, 533 P.2d 578, 583 (1975) ("The determination of the weight and effect of the evidence, as well as inferences to be drawn from both direct and circumstantial evidence, are matters reserved for the determination of ... the trial jury.") Defendant admits that his mother's testimony "was sometimes conflicting" and "ambiguous." At trial, Ms. Peña acknowledged her testimony at the preliminary hearing that she did not give Defendant authority to cash her checks. This testimony directly contradicted other testimony she gave concerning the checks from other persons that she had in her possession. She consistently testified that she did not give Defendant authority to sign checks on her bank account after it had been closed. The State was further able to substantially impeach her testimony with the testimony of two police officers. From the inconsistencies in Ms. Peña's testimony, the jury could reasonably decide not to credit her testimony concerning Defendant's authority to cash or sign her checks. *See State v. Ortiz–Burciaga,* 1999–NMCA–146, ¶ 22, 128 N.M. 382, 993 P.2d 96 ("It is the 'exclusive province of the jury' to resolve factual inconsistencies in testimony." (quoting *State v. Orgain,* 115 N.M. 123, 126, 847 P.2d 1377, 1380 (Ct.App.1993))). The jury could thus reasonably conclude that Defendant did not have the authority to cash or sign the checks and knew that he lacked the authority to do so.

{9} Second, in contrast with the cases cited by Defendant, we have more than evidence of mere spontaneous flight in this case. *See Rodriguez,* 23 N.M. at 163, 167 P. at 427 (stating that defendant fled while being brought to the courthouse for trial); *Kenny,* 112 N.M. at 645, 818 P.2d at 423 (stating that the defendant fled after police stopped the car in which he was riding). The testimony of Mr. Ellis describes not only the fact of flight, but also the circumstances of the flight. The circumstances included Defendant's running to a car which was hidden from view behind another store away from Albertson's and driven by another person. The car took off immediately after Defendant jumped into the passenger window.

{10} The circumstances surrounding Defendant's flight are sufficient for the jury to reasonably conclude that Defendant was conscious of his guilt with regard to the checks and had a car waiting. Thus, the circumstances surrounding Defendant's flight in this case show not only spontaneous flight, as was the case in *Rodriguez* and *Kenny,* but also show evidence of a planned escape.

{11} Defendant claimed that he did not flee Albertson's because of the check incident, but rather, he fled because of outstanding traffic violations. Indeed, Defendant's explanation of his flight is relevant evidence. *See Rodriguez,* 23 N.M. at 178, 167 P. at 433 (stating that absence of explanation or reasons or motives prompting flight may be considered by jury). However, in this case, Defendant's alternative motive provides a justification for spontaneous flight only. It does not explain why he needed to prepare to flee by having a car waiting for him in the alley. The jury was free to reject Defendant's reasons for his flight and could reasonably conclude that he expected to flee the Albertson's store that night. *See State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988) (recognizing that the jury is free to reject a defendant's version of the facts).

{12} Moreover, the jury also had before it evidence of Defendant's successful passing of the December 1, 1996 check. This evidence, in turn, provided a basis for understanding Defendant's attempt to pass a check on December 3, 1996. The jury was able to consider this evidence along with Ms. Peña's conflicting testimony about her authorization and Defendant's flight in order to draw an inference about Defendant's knowledge that he lacked the authority to sign or cash the checks. *See Vigil,* 87 N.M. at 350, 533 P.2d

at 583 (stating that inferences to be drawn from the evidence are matters for the jury). From all this evidence, the jury could reasonably conclude that Defendant took the actions he did on December 3, 1996 because he knew he lacked the authority to sign both the December 1, 1996 and December 3, 1996 checks.

*Impeachment*

{13} Over Defendant's objection, the trial court permitted the testimony of Officer Kelley Lowe and Sergeant David Edmondson to impeach Ms. Peña. Defendant contends that the officers' testimony was not inconsistent with the testimony of Ms. Peña and therefore was not permissible for impeachment purposes.

{14} Officer Lowe testified that Ms. Peña told him that she had received a telephone call from the grocery store inquiring about the cashing of one of her checks. He also testified that Ms. Peña told him that she did not authorize the check. Officer Edmondson testified that Ms. Peña told him that when called by a grocery store employee, she said that she had not given Defendant authority to sign her check.

{15} Defendant acknowledges that Ms. Peña testified inconsistently at trial. As emphasized by Defendant on appeal, Ms. Peña's testimony included statements that Defendant had authority to cash her checks even though she may have qualified her testimony to include only the signing of checks when she had checking accounts. Ms. Peña testified that she did not remember telling a police officer that Defendant did not have authority to cash her checks or that she had made a similar statement to a grocery store employee.

{16} The Rules of Evidence permit a party to impeach the credibility of a witness with evidence that the witness made a statement which is inconsistent with the witnesses' trial testimony. *Cf. State v. Gutierrez,* 1998–NMCA–172, ¶¶ 8, 10, 126 N.M. 366, 969 P.2d 970 (holding that prior inconsistent statement not under oath is inadmissible as substantive evidence); *see also* Rule 11–613 NMRA 2000. The officers' testimony about Ms. Peña's statements pointed out the inconsistencies in her testimony. The trial

court did not abuse its discretion in admitting the officers' testimony. *See State v. Olivas,* 1998–NMCA–024, ¶ 23, 124 N.M. 716, 954 P.2d 1193 (stating standard of review for decision to allow prior inconsistent statement as abuse of discretion). Nor did the trial court abuse its discretion if, as Defendant argues, the police officers' testimony misrepresented what Ms. Peña told them. The trial court did not limit Defendant's ability to cross-examine the officers or to argue any discrepancies in the testimony to the jury.

*Requested Mistake–of–Fact Jury Instruction*

{17} Defendant asserts that the trial court erred in denying Defendant's requested jury instruction concerning mistake of fact. Defendant argued that he honestly believed that he wrote the check on an open bank account of his mother but was mistaken in his belief. We have addressed this issue in *State v. Griscom,* 101 N.M. 377, 378–79, 683 P.2d 59, 60–61 (Ct.App.1984) in the context of fraud. In this case, as in *Griscom,* the jury instructions on the elements of forgery required the jury to find that Defendant intended to injure or defraud. The trial court adequately instructed the jury, and Defendant had full opportunity to explain to the jury his honest belief and that he was mistaken and argue to the jury that he did not intend to defraud Albertson's.

*Cumulative error*

{18} Because we conclude that there was no error, there cannot be cumulative error. *See State v. McGuinty,* 97 N.M. 360, 364, 639 P.2d 1214, 1218 (Ct.App.1982) (stating that cumulative error does not arise when there are no errors and the defendant has received a fair trial).

*Conclusion*

{19} For the above stated reasons, we affirm the judgment and sentence of the district court.

{20} **IT IS SO ORDERED.**

SUTIN and KENNEDY, JJ., concur.