818 P.2d 420

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Joe Lewis KENNY, Defendant–
Appellant.**

No. 12175.

Court of Appeals of New Mexico.

July 25, 1991.

Certiorari Denied Sept. 11, 1991.

Tom Udall, Atty. Gen., Margaret B. Alcock, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Michael Slosberg, Albuquerque, for defendant-appellant.

## OPINION

APODACA, Judge.

Defendant appeals his convictions for kidnapping, conspiracy to commit kidnapping, two counts of armed robbery, conspiracy to commit armed robbery, aggravated battery (with a deadly weapon) or, in the alternative, aggravated battery (causing great bodily harm), and aggravated burglary. He raises six issues on appeal: (1) error in admitting evidence concerning defendant's flight; (2) error in admitting a gun and bullet into evidence; (3) sufficiency of the evidence; (4) refusal to compel defendant's brother to testify when he claimed a fifth amendment privilege; (5) denial of defendant's motion for a new trial; and (6) cumulative error. Under the cumulative error issue, defendant raises the issues of merger of aggravated burglary with the second armed robbery offense and jury confusion arising from the jury

instructions and verdict forms regarding the alternative counts of aggravated battery. We affirm.

## FACTS

The victim, the manager of a Western Sizzlin' restaurant in Albuquerque, was accosted as she arrived home in the early morning hours of June 20, 1984. Two armed assailants, a man and a woman, approached the victim as she was getting out of her car and forced her into the car's back seat. They first looked through her purse, then drove away. The woman was driving. The man was seated in the back seat with the victim. He asked for money, and she said that there were a few hundred dollars in the restaurant office. He told the victim she was lying and hit her on the head with his handgun. When the victim hesitated to give the man her business keys, he shot the gun in the car. The man told her to point out the keys to the restaurant's front door and office from those in her purse. He then took two rings from the victim's fingers. Money and a credit card were later discovered missing from her purse.

The woman drove the vehicle to the restaurant without receiving any directions from the victim. The man asked the victim about the security system, and she gave him a false security code number. He became angry and tried to strike the victim in the face with his weapon. She blocked the attempt and the blow broke her wrist. The victim showed the man which exterior door matched the key she had given him. Once they were inside the building, she led him to the office. The man took money from a file cabinet, and he and the victim then left the restaurant. The two assailants left the victim in the restaurant parking lot and fled.

At about 10:30 a.m. that same day, Albuquerque police officers stopped a vehicle in which defendant was an occupant, in connection with their investigation of a bank robbery that had occurred that morning. Defendant fled from the vehicle's back seat

and was apprehended after a foot chase. A co-defendant, Jacqueline Moore, and defendant's brother, Kevin Kenny, were in the front seat of the car. Investigating officers seized a handgun from the side board of the front passenger seat.[1]

A police officer took Moore to the police substation. Before Moore had been searched, she was given permission to use the restroom. She was accompanied there by a female police secretary. The secretary had used the restroom ten minutes earlier and had not seen anyone use it between then and when Moore used it. The secretary watched Moore but did not see her put any metal objects into the toilet. Moore flushed the toilet. Ten minutes later, the secretary found a bullet in the toilet when she returned to the restroom for water.

At trial, defendant attempted to discredit the victim's identification of him and sought to demonstrate that his brother, Kevin, had committed the offenses. The victim testified that Kevin had worked for her at the restaurant one month before the incident during a six-day period. She identified defendant from a photograph array, made an in-court identification, and identified a photograph of Kevin.

After defendant's convictions, and after judgment and sentence had been filed, the trial court received letters exculpating defendant, purportedly written by Moore and Kevin. Based on these letters, defendant moved for a new trial, but the trial court denied his motion. The Moore letter stated that defendant had not been her accomplice, and the Kevin letter stated that he, not defendant, had committed the crimes.

## EVIDENCE OF FLIGHT

█ Over defendant's objection, the trial court admitted evidence that defendant fled after the police stopped the car in which he was riding. We will not disturb the trial court's evidentiary ruling absent a clear abuse of discretion. *State v. Worley*, 100 N.M. 720, 676 P.2d 247 (1984).

---

1. The three subjects were eventually convicted of charges related to the bank robbery. Defendant's conviction, however, was subsequently reversed on appeal because of insufficient evidence.

■ It is undisputed that the traffic stop was unrelated to the subject crimes. The police were investigating a bank robbery, not the crimes involving the Western Sizzlin' restaurant. Defendant successfully prevented the state from introducing any evidence of the bank robbery or the reasons for the stop. Although acknowledging that evidence of flight is relevant to show a consciousness of guilt, *see State v. Rodriguez*, 23 N.M. 156, 167 P. 426 (1917), he argues that the admission of the flight evidence placed him in an unfair position, since he was unable to explain why he fled without prejudicing his defense by alerting the jury to his suspected involvement in the bank robbery.

To avoid such a predicament, defendant requested the trial court to exclude the evidence of his flight, as well as the evidence that would have, in his view, explained his actions. We are not sympathetic toward defendant's dilemma because it was created by an evidentiary exclusion that he himself urged on the trial court. *Cf. State v. Peterson*, 103 N.M. 638, 711 P.2d 915 (Ct.App.1985) (one may not be heard to complain because the very relief he requested was granted), *cert. denied*, 475 U.S. 1052, 106 S.Ct. 1279, 89 L.Ed.2d 586 (1986).

■ Defendant next contends that the prejudicial impact of the evidence of flight outweighed its probative value, in view of other evidence establishing his intent. He argues that the state was not required to prove consciousness of guilt and that the inferences resulting from the evidence of flight could have been inferred from other evidence introduced by the state. Even if the evidence of flight could be characterized as cumulative, it would still be admissible to corroborate other evidence, particularly the challenged identification of defendant by the victim. *See State v. Upton*, 60 N.M. 205, 290 P.2d 440 (1955). We conclude that the probative value of the evidence of flight was not outweighed by its prejudicial effect. *Cf. State v. Fuson*, 91 N.M. 366, 574 P.2d 290 (Ct.App.1978) (trial court's decision excluding records as collateral in nature because their probative value

was outweighed by their prejudicial effect sustained as not an abuse of discretion).

■ Defendant relies on *State v. Rowell*, 77 N.M. 124, 419 P.2d 966 (1966), for the proposition that evidence of his flight constituted evidence of other bad acts that was used to prove he acted in conformity with that prior misconduct. We hold that the restriction of SCRA 1986, 11–404(B) is not applicable here since the evidence was used to prove, not defendant's character, but his identity and consciousness of guilt. For these reasons, we conclude that the trial court did not abuse its discretion in admitting evidence of defendant's flight from the police. *See State v. Worley; State v. Rodriguez;* SCRA 1986, 11–402.

■ Defendant draws our attention to the fact that the crimes occurred approximately ten hours before he fled from the police. He contends that this fact establishes that the crimes charged were so remote in time from his flight that the evidence should have been excluded. *Cf. State v. Beachum*, 96 N.M. 566, 632 P.2d 1204 (Ct.App.1981) (probative value of defendant's seven-year-old confession to prove identity in unrelated matter was diminished by remoteness). We disagree that passage of a ten-hour period rendered the evidence of flight too remote and thus reject defendant's argument.

■ During deliberations, the jury sent a note to the trial court inquiring about the reasons for the stop. Defendant contends that the note established that the probative value of the evidence of flight was outweighed by the danger of confusing the issues. With defendant's approval, the trial court responded to the jury's inquiry to the effect that, if the trial court did not answer any of the jury's questions, it would be because the questions were improper as a matter of law. Thus, this response effectively informed the jury that the official reasons for the stop were not an issue for the jury's concern. Any confusion about this aspect of the events was eliminated by the trial court's response. We hold that the trial court did not abuse its discretion in determining otherwise. *See State v. Rose*, 79 N.M. 277, 442 P.2d

589 (1968) (question of danger of confusion is within discretion of trial court), *cert. denied*, 393 U.S. 1028, 89 S.Ct. 626, 21 L.Ed.2d 571 (1969).

## ADMISSION OF THE GUN AND THE BULLET

■ Defendant argues that the state did not establish the necessary foundation showing that the gun and the bullet had any probative value. To establish the requisite relevancy sufficient to permit admission of the challenged items, the state was required to show that the items were connected with defendant, the victim, or the crime itself. *See State v. Gray*, 79 N.M. 424, 444 P.2d 609 (Ct.App.1968). Defendant apparently contends that the state should have done more to establish that the weapon found in the vehicle was the one used in connection with the subject crimes, such as testing the weapon to see if it had recently been fired. We disagree for the following reasons.

■ The weapon and bullet were found approximately ten hours after the crimes had been committed. The victim testified that the weapon was similar to the handgun held by the assailant. The caliber of the bullet found after Moore had left the bathroom matched that of the weapon. Additionally, it is well established that weapons and other instruments found in the possession of an accused's associates are admissible as bearing on the crime. *State v. Samora*, 83 N.M. 222, 490 P.2d 480 (Ct.App.1971). Generally, the admission or exclusion of evidence rests within the sound discretion of the trial court. *State v. Lopez*, 105 N.M. 538, 734 P.2d 778 (Ct.App. 1987). Evidence of a weapon or related effects found in the possession of defendant or an alleged accomplice are generally admissible as part of the history of the. charged offenses. *Id.; see State v. Burdex*, 100 N.M. 197, 668 P.2d 313 (Ct.App. 1983).

■ Defendant also suggests that admission of the bullet and handgun were improper because he did not have an opportunity to elicit Moore's testimony on the issue. Because defendant has not supported this contention with cited authority, we will not address it. *See Wilburn v. Stewart*, 110 N.M. 268, 794 P.2d 1197 (1990).

■ We also disagree with defendant's contention that the bullet and gun were inadmissible character evidence, because the evidence was used to prove that defendant used a firearm in the commission of the charged felonies, not to prove that he acted in conformity with a bad character. *See* R. 11–404(B); *cf. Casaus v. State*, 94 N.M. 58, 607 P.2d 596 (1980) (prejudicial impact of handgun probably unrelated to alleged crimes outweighed its probative value). We conclude that the trial court did not abuse its discretion in admitting the handgun and bullet and that the state made a sufficient showing of their connection to defendant, the victim, and the crimes charged. *See State v. Samora; State v. Gray.*

## SUFFICIENCY OF THE EVIDENCE

■ Defendant argues that the evidence was insufficient to prove beyond a reasonable doubt that he committed the crimes. To determine whether the evidence was sufficient, we must view the evidence in the light most favorable to the state, resolving all conflicts and indulging all permissible inferences in favor of the guilty verdicts. *State v. Sutphin*, 107 N.M. 126, 753 P.2d 1314 (1988).

■ Evidence of defendant's involvement in the crimes included the following: the victim described defendant's appearance to the police and selected his picture from a photo array of nine men. At trial, the victim positively identified defendant as her assailant. She saw his face when he pulled up his stocking mask outside the restaurant and again when they were inside the office. Although the victim's eyeglasses had been seized, she was nevertheless able to see large objects close to her. The victim's ophthalmologist testified that the victim would not have any difficulty in seeing a person's face at a distance of two or three feet. The victim was also able to identify a photograph of Kevin Kenny as a

former employee. Ten hours after the crimes were committed, defendant fled from a vehicle containing masks, hats, and a weapon identified by the victim as being similar to those used in the commission of the offenses.

Defendant characterizes the victim's testimony as shaky and impeached. Nothing in the record suggests to us that the victim faltered in her identification of defendant as her assailant. She offered plausible explanations when defendant cross-examined her concerning apparent inconsistencies. We hold that any conflicts in her testimony were for the fact finder to resolve. *See State v. Ellis*, 89 N.M. 194, 548 P.2d 1212 (Ct.App.1976).

Defendant next contends he had an unrebutted alibi that the state did not overcome. Charlotte Getman testified that defendant was at her house during the relevant times. Defendant's suggestion that his alibi was not met by countervailing proof is an overstatement. One cannot ignore that the victim identified defendant as her assailant. Essentially, defendant argues that the jury should have believed Getman and disbelieved the victim. The credibility of witnesses is determined by the trier of fact, not by the reviewing court. *See State v. Williams*, 78 N.M. 431, 432 P.2d 396 (1967). The weight to be given to evidence bearing upon defendant's defense of alibi is a question of fact for the jury. *See State v. Garcia*, 80 N.M. 21, 450 P.2d 621 (1969). The jury was free to reject defendant's version of events. *See State v. Sutphin.*

Finally, under this issue, defendant argues that the evidence was insufficient to prove that the victim, as restaurant manager, and not the restaurant, was the subject or victim of the theft inside the restaurant. The crime of robbery requires that the property taken be in the immediate control of another, NMSA 1978, § 30–16–2 (Repl.Pamp.1984). However, the property need not be owned by the person from whom it was taken. *See State v. Powers*, 37 N.M. 595, 26 P.2d 230 (1933) (crime of robbery can be committed if stolen proper-

ty is in the possession of a servant). Based on the victim's testimony that she was the restaurant manager and that she was forced to admit defendant to the office, the jury could have inferred that the money taken from the restaurant filing cabinet was within her immediate control. We thus hold that the evidence was sufficient to enable the jury to convict defendant of the crimes charged.

## TESTIMONY OF DEFENDANT'S BROTHER

Both at trial and at a hearing on defendant's motion for a new trial, defendant's brother, Kevin, asserted his fifth amendment privilege against self-incrimination in response to certain questions posed by defendant. Defendant contends the trial court erred in not compelling Kevin to answer the questions, either because the answers did not tend to incriminate him or because Kevin's previous testimony amounted to a waiver of the privilege. We proceed to review the testimony in the two proceedings separately.

### 1. Trial Testimony

It was defendant's theory that Kevin, not defendant, had committed the crimes and that the victim had been mistaken in her identification of defendant as her assailant. At trial, Kevin refused to answer questions about his former employment at the Western Sizzlin' restaurant, his height and weight, his activities on the night in question, and whether he had ever used a stocking cap similar to the mask found in the vehicle. These questions were clearly designed to link Kevin with the crimes charged against defendant. The answers to these questions, in light of the circumstances of this case, tended to be incriminating because they could furnish links in the chain of evidence that would lead to a criminal prosecution of Kevin and be used against him at trial. *See Maness v. Meyers*, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975).

We first hold that, in identifying a photograph of himself, Kevin did not voluntarily disclose any matter reasonably relat-

ed to the subject matter of the unanswered questions, as contended by defendant. We thus conclude that there was no waiver of Kevin's privilege against self-incrimination. *Cf. State v. Allen,* 91 N.M. 759, 581 P.2d 22 (Ct.App.1978) (by testifying on his own behalf, defendant waived privilege with respect to examination regarding prior convictions); SCRA 1986, 11–511 (waiver of privilege by voluntary disclosure).

▪ Several other questions asked during the trial were presumably designed to elicit answers that would bolster defendant's alibi. For example, defendant asked Kevin if he had spoken to defendant's wife on the night in question, whether she had asked about defendant's whereabouts, and if he knew whether defendant's wife was in New Mexico at the time. Other witnesses had previously testified in connection with defendant's alibi. Defendant's wife testified that she spoke with defendant on the phone from Denver on the night of the events and arranged to be picked up at the airport in the morning. Getman testified that she was with defendant from 12:30 a.m. until 4:30 a.m. on June 20, 1984.

Defendant evidently anticipated that Kevin would testify he had not seen defendant during this time period. However, even if Kevin had testified that he had not seen defendant and that he communicated that fact to defendant's wife during a long distance phone call, defendant's claim that he spent the time with Getman would not be bolstered. The fact that Kevin may not have seen defendant would not necessarily prove that defendant was with Getman when the crimes were committed. Even if this series of questions may not have tended to elicit incriminating answers, the answers were not relevant evidence, and defendant was not prejudiced by the trial court's refusal to compel the witness to answer. *See State v. Wright,* 84 N.M. 3, 498 P.2d 695 (Ct.App.1972) (for error to be reversible it must be prejudicial); *Wright v. Brem,* 81 N.M. 410, 467 P.2d 736 (Ct.App. 1970) (appellate court will only correct errors that change the result).

▪ Defendant also requested his brother to display his hands to the jury, which the trial court disallowed. Defendant argues that it was error not to compel the showing because demonstration of such physical characteristics is not a testimonial communication. *See State v. Mordecai,* 83 N.M. 208, 490 P.2d 466 (Ct.App.1971). On the other hand, the state argues that defendant was not prejudiced by the trial court's refusal to compel because the evidence would not have affected the outcome of the case in any event. Defendant counters that the victim testified the male assailant had large hands that practically covered the gun. Yet, our review of the record does not disclose that the victim testified directly concerning the size of the assailant's hands. Rather, she testified that the gun was small. Since the display of Kevin's hands would have no affect on the outcome, the refusal to require the showing was not reversible error. *See State v. Wright.*

### 2. *Motion Testimony*

▪ During the hearing on defendant's motion for a new trial, defendant tried to connect Kevin to the letter in which he had purportedly confessed to the crimes for which defendant had been convicted. The questions Kevin refused to answer were designed to elicit evidence tending to show that he had confessed to the crimes and had written a letter that included a confession. Since the incriminating nature of the information sought was facially evident, the trial court did not err in refusing to compel the witness to answer. *See United States v. Sharp,* 920 F.2d 1167 (4th Cir. 1990).

▪ The letter misspelled Kevin's attorney's name. Kevin testified that he had just recently learned how to spell his lawyer's name. We hold that this response did not constitute a waiver of Kevin's privilege with respect to the subject matter of the unanswered questions. R. 11–511.

### MOTION FOR A NEW TRIAL

▪ The pertinent question under this issue is whether the trial court abused its discretion in failing to grant a new trial

based on the letters purportedly from Moore and Kevin. *See State v. Sena*, 105 N.M. 686, 736 P.2d 491 (1987) (motions for new trial based on newly discovered evidence rest in the sound discretion of the trial court). "Kevin's letter" stated that he committed the crimes. "Moore's letter" stated that defendant was not guilty and that she could not name her accomplice because she feared reprisals inside the prison system. Neither letter was ever authenticated to show that the purported authors did, in fact, write them.

Defendant contends that a jury could have found that "Moore's" statement (that defendant was not her accomplice) was truthful, heartfelt, and sincere. The circumstances indicating collusion or ulterior motives, namely the incarceration of Moore and Kevin and their relationship with defendant, however, suggest that the trial court did not abuse its discretion in determining otherwise. *See State v. Smith*, 104 N.M. 329, 721 P.2d 397 (1986). These same factors could have appropriately affected the trial court's view of the letter alleged to be from Kevin.

Additionally, in view of the absence of a foundation showing that Kevin or Moore were the authors, *see* SCRA 1986, 11–901(A) (authentication and identification required), the judge could have also concluded that the letters were not relevant or material. *See* SCRA 1986, 11–104(B) (relevancy conditioned on fact). Finally, the jury at defendant's trial factually determined that the victim accurately identified defendant as her assailant. Evidence at trial showed that Kevin had been an employee at Western Sizzlin', that the victim knew him, and that the victim could distinguish him from defendant.

■ It is fundamental that a motion for a new trial based on newly-discovered evidence will not be granted unless the evidence is material and will probably change the result if a new trial is granted. *State v. Volpato*, 102 N.M. 383, 696 P.2d 471

(1985). We hold that the trial court did not abuse its discretion in determining that the letters would probably not result in acquittal if a new trial was granted.

## CUMULATIVE ERROR

■ Defendant contends that the trial court committed cumulative error in (1) allowing the state to charge defendant with committing both the aggravated burglary and second armed robbery and (2) confusing the jury with various jury instructions and verdict forms regarding the alternative aggravated battery counts. As the following discussion establishes, the doctrine of cumulative error has no application because there were no errors committed and defendant received a fair trial. *See State v. Lopez*, 105 N.M. 538, 734 P.2d 778 (Ct. App.1986), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (1987).

### 1. *Merger of Aggravated Burglary and Armed Robbery*

According to the victim's testimony, defendant entered the restaurant without authorization and committed an armed robbery once inside. Defendant argues that it was impossible to commit the aggravated burglary without committing the armed robbery because evidence of the robbery was required to prove his intent to commit the theft once he entered the restaurant.

■ The sole limitation on multiple punishments is legislative intent. *Swafford v. State*, 112 N.M. 3, 810 P.2d 1223 (1991). In determining the legislative intent to punish, we consider first whether the conduct was unitary; if two events are sufficiently separated by either time or space, the conduct is separate and distinct and our inquiry is at an end. *Id.; see also State v. Bachicha*, 111 N.M. 601, 808 P.2d 51 (Ct.App.1991) (merger does not occur when different evidence establishes different offenses).

■ The victim testified that, while she was in the car with the two assailants, defendant not only asked her how much money was in the restaurant office, but made her identify which of her keys opened the doors to the front of the restaurant and

the office. Based on this evidence alone, the jury could have inferred that defendant had the intent to commit a subsequent theft at the time he entered the restaurant. *See State v. Mata,* 86 N.M. 548, 525 P.2d 908 (Ct.App.1974) (intent to commit a burglary may be proven from the facts and circumstances). In fact, the requisite intent could be reasonably and justifiably inferred from the unauthorized entry alone. *See State v. Castro,* 92 N.M. 585, 592 P.2d 185 (Ct.App.1979) (proof that intent was consummated is not required).

The acts constituting the armed robbery took place inside the restaurant after occurrence of the conduct forming the basis for the aggravated burglary conviction. The events were separated both by time and physical distance. Since the conduct underlying the offenses was not unitary, we hold that the separate convictions for aggravated burglary and armed robbery were permissible in this appeal. *See Swafford v. State; see also State v. Bachicha.*

### 2. *Count VII Alternatives*

Defendant was charged with aggravated battery. *See* NMSA 1978, § 30–3–5(C) (Repl.Pamp.1984). Under the statute, aggravated battery is a third degree felony if it causes great bodily harm or if it was committed with a deadly weapon. Defendant was charged with a third degree felony under either alternative. The jury was given separate instructions and verdict forms relating to each of these alternatives. The jury returned guilty verdicts under both alternatives. Defendant argues that the jury could only find defendant guilty of one of the two alternatives. *State v. Ortiz,* 90 N.M. 319, 563 P.2d 113 (Ct.App.1977), relied on by defendant, supports the conclusion that there is nothing unfair in charging defendant in the alternative, where the evidence supports both alternatives.

■ We disagree with defendant that he was convicted of two crimes under count VII. The trial court's judgment and sentence makes clear that defendant was con-

victed of and sentenced for only one count of aggravated battery. Rather, as we view the jury's verdict, defendant was convicted of only one crime under two theories. *See State v. Utter,* 92 N.M. 83, 582 P.2d 1296 (Ct.App.1978); *cf. Schad v. Arizona,* — U.S. ——, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (Court sustained a capital conviction on the theory that the defendant had been convicted of only one crime). After the jury had expressed its lack of understanding with respect to the instructions on count VII, the trial court, with defendant's agreement, instructed the jury that they had not addressed one of the alternative counts.

The jury subsequently found defendant guilty of the alternative charges of aggravated battery. The jury's action in finding defendant guilty under both alternatives demonstrates that any confusion was cured by the trial court. *See State v. Johnson,* 99 N.M. 682, 662 P.2d 1349 (1983) (trial court's communication with jury resolved any possible confusion created by two dissimilar forms for the same verdict). Although the jury returned verdict forms indicating that they found defendant guilty of the offense of aggravated battery with a deadly weapon, or alternatively, of the same offense by commission of great bodily harm, the trial court imposed only one sentence for this offense.

### CONCLUSION

We uphold defendant's convictions under all counts. We hold that the trial court did not abuse its discretion in admitting evidence of defendant's flight to show his consciousness of guilt, or in admitting the gun and bullet as evidence. There was sufficient, competent evidence in this case to support a finding of guilt beyond a reasonable doubt under all counts. Additionally, we determine that defendant's brother properly asserted his fifth amendment right against self-incrimination and that any error of the trial court in granting the privilege to specific questions, if any, was harmless under the facts of this appeal.

We also conclude that the trial court properly denied defendant's motion for a new trial on the ground that the purported evidence would not have changed the trial results. Finally, finding no error with respect to the issues of merger and jury confusion over the jury instructions and verdict forms, we conclude there was no cumulative error. We thus affirm defendant's convictions.

IT IS SO ORDERED.

DONNELLY and MINZNER, JJ., concur.