This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                   **No. 33,108**

**GENARO SANDOVAL,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Kenneth H. Martinez, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Kenneth H. Stalter, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Sergio Viscoli, Appellate Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**ZAMORA, Judge.**

**{1}** Defendant, Genaro Sandoval, appeals his convictions for one count each of criminal sexual penetration of a minor (CSPM), kidnapping, sexual exploitation of a child, and aggravated assault with a deadly weapon. Defendant challenges the relevance of evidence admitted against him and claims that evidentiary errors cumulatively deprived him of a fair trial. Defendant also challenges the sufficiency of the evidence to support the convictions for sexual exploitation of a child and kidnapping and argues that the CSPM and kidnapping convictions violate the prohibition against double jeopardy. We affirm.

**BACKGROUND**

**{2}** Defendant was originally indicted on 25 counts relating to eight different individuals. The trials were severed, and this case relates only to offenses against one victim, B.A.

**{3}** In this case, the State alleged that in 2003, Defendant approached B.A., an eleven-year-old boy, when he was walking home from school and tricked him into going to a secluded area with the promise of money, and once there, he threatened B.A. with a gun and sexually assaulted him.

**{4}** At trial, B.A.'s father testified that B.A. reported the sexual assault to him soon after it happened, and that B.A.'s father in turn contacted the police. B.A. described his attacker as wearing a gray sweatshirt and glasses and having a gun and a video

2

camera. B.A. was taken to the hospital and examined by a sexual assault nurse examiner (SANE nurse) who administered a sexual assault kit and took swabs from B.A.'s body and clothing. DNA testing revealed the presence of semen on B.A.'s shorts.

{5} In 2005 Defendant was investigated for crimes in McKinley County. As part of that investigation, a search warrant was executed on Defendant's residence, and among the evidence collected, by police, was a video camera. In 2007 Defendant pled guilty to the McKinley County crimes and gave a DNA sample as part of that plea agreement. Defendant's DNA profile was matched to the DNA profile from the semen found on B.A.'s shorts in 2003. Albuquerque Police, investigating Defendant in connection with B.A.'s sexual assault, executed two search warrants on Defendant's residence in Gallup, New Mexico. Evidence collected during the investigation included hooded sweatshirts, glasses, and ammunition for a .45 caliber handgun. Defendant's employer, having learned of the investigation, turned over to police a .45 caliber handgun that Defendant gave her. According to the employer, Defendant gave her the gun in 2006 for protection and told her he was "unable to hold it."

{6} The case went to trial in January 2013. Evidence admitted over Defendant's objections included: the video camera, the gun along with its case, magazine and the ammunition (the gun evidence), a pair of glasses, a gray sweatshirt, and photographs

3

of two other sweatshirts collected from Defendant's residence in 2007 (the sweatshirt evidence). Defendant was convicted of CSPM, kidnapping, sexual exploitation of a child, and aggravated assault with a deadly weapon. The jury also found that a firearm that was used in the commission of these crimes.

**DISCUSSION**

**Evidentiary Challenges**

**{7}** Defendant challenges the admissibility of the video camera, the gun evidence, the sweatshirt evidence, and the glasses. He argues that the State failed to demonstrate a "nexus" between this physical evidence and the crimes perpetrated against B.A. We review the admission or exclusion of evidence for an abuse of discretion. *State v. Montoya*, 2014-NMSC-032, ¶ 15, 333 P.3d 935. "An abuse of discretion arises when the evidentiary ruling is clearly contrary to logic and the facts and circumstances of the case." *State v. Downey*, 2008-NMSC-061, ¶ 24, 145 N.M. 232, 195 P.3d 1244 (internal quotation marks and citation omitted).

**{8}** Relevant evidence is evidence having "any tendency to make a fact more or less probable than it would be without the evidence." Rule 11-401(A) NMRA. All relevant evidence is generally admissible unless otherwise provided by law. Rule 11-402 NMRA. In order to establish the requisite relevancy sufficient to permit admission of the challenged evidence, the State is required to show that the evidence is "connected

4

with the defendant, the victim, or the crime itself." *State v. Apodaca*, 1994-NMSC-121, ¶ 28, 118 N.M. 762, 887 P.2d 756 (internal quotation marks and citation omitted); *State v. Kenny*, 1991-NMCA-094, ¶ 15, 112 N.M. 642, 818 P.2d 420; *State v. Young*, 1985-NMCA-079, ¶ 11, 103 N.M. 313, 706 P.2d 855. "[I]t is not necessary that [the evidence] relate directly to the facts in controversy." *State v. Ramming*, 1987-NMCA-067, ¶ 33, 106 N.M. 42, 738 P.2d 914. "Evidence may be relevant even if it is circumstantial" and any "[d]oubts concerning the . . . case go to the weight of the evidence, not to their admissibility. *Id.*

**The Handgun Evidence**

**{9}** Defendant's former brother-in-law identified the handgun (along with the case and magazine) as one he had given Defendant in 2000. Defendant's former employer identified the handgun (along with the case and magazine), as the gun that Defendant gave her in 2006 that she turned in to police in 2007. The evidence related to the handgun is probative and relevant to show that Defendant owned a handgun at the time the crimes against B.A. were committed in 2003 and that Defendant had the opportunity to use the handgun in the commission of those crimes. *See Kenny*, 1991-NMCA-094, ¶ 16 (stating that "it is well established that weapons and other instruments found in the possession of an accused's associates are admissible as bearing on the crime" and that "[e]vidence of a weapon or related effects found in the

5

possession of [the] defendant . . . are generally admissible as part of the history of the charged offenses").

{10} Defendant cites *Casaus v. State*, 1980-NMSC-017, 94 N.M. 58, 607 P.2d 596, in support of his argument that the handgun evidence is not relevant because it was not directly linked to the crimes against B.A. and that any probative value of the handgun evidence is outweighed by its prejudicial impact. Defendant's reliance on *Casaus* is misplaced.

{11} In that case, the New Mexico Supreme Court held that the prejudicial impact of admitting a gun into evidence, where the record suggested that the gun was *not* the one used in the crimes charged, outweighed its probative value. *Id.* ¶ 3. *Casaus* stands for the proposition that the "the state may not introduce into evidence a handgun not used in the perpetration of a crime for which the defendant is charged if the [s]tate does so to link the defendant to the commission of another crime." *State v. Espinosa*, 1988-NMSC-050, ¶ 11, 107 N.M. 293, 756 P.2d 573. Here, there is nothing in the record to indicate that the handgun was not the weapon used in perpetrating the crimes against B.A., and there is no indication that the State introduced the handgun to link Defendant to a crime other than the crimes charged in this case. Accordingly, we reject Defendant's contention that *Casaus* controls under the facts of this case.

{12} We also reject Defendant's contention that the handgun evidence was inadmissible as evidence of prior bad acts. The evidence was used to show that Defendant used the weapon in the commission of the crimes charged. Defendant argued that the gun evidence should be suppressed under Rule 11-404(B)(1) NMRA because it was being used to show that "[D]efendant had a gun, therefore, he's a bad person and he must have used that gun . . . in the assault of [B.A.]" The court denied the motion. On appeal, Defendant does not point to anywhere in the record where the evidence was used to show that Defendant acted in conformity with an inadmissible prior bad act as contemplated by Rule 11-404(B). We conclude that the district court did not abuse its discretion in admitting handgun evidence.

**The Glasses and Sweatshirt Evidence**

{13} Retired Albuquerque Police Department (APD) Detective Jay Barnes testified that the glasses were taken from Defendant when he wore them during a police interview in 2007. Defendant argues that because the glasses were not identified as the glasses worn by B.A.'s assailant, they are not relevant. We disagree. Our Supreme Court has held that when police seize an item a defendant is wearing, those items are sufficiently connected to the defendant to establish relevance and admissibility. *State v. Campos*, 1956-NMSC-082, ¶ 9, 61 N.M. 392, 301 P.2d 329, *abrogated on other grounds by State v. Holly*, 2009-NMSC-004, 145 N.M. 513, 201 P.3d 844. Where a

7

question with regard to the "connection of the article sought to be admitted with the defendant or the crime is raised, the evidence should be admitted for the determination of the jury. The lack of positive identification in such a case affects the weight of the article or substance as evidence rather than its admissibility." *Campos*, 1956-NMSC-082, ¶ 9 (internal quotation marks and citation omitted).

**{14}** However, where clothing cannot be connected to the defendant, the victim, or the crime, its admission is not proper. In *State v. Gray*, 1968-NMCA-059, ¶¶ 5, 11, 27, 79 N.M. 424, 444 P.2d 609, this Court held that the identification of certain articles of children's clothing was "wholly insufficient to connect them with the [victim] or with the crime itself and were improperly admitted" where children's clothing was collected from the victim's residence, several other children lived in the home, blood on the clothing did not yield DNA that could be tested and matched to the victim, and no testimony was given that the clothing belonged to or was worn by the victim.

**{15}** In this case, three hooded sweatshirts (or hoodies)—one gray, one dark blue, and one black—were recovered from Defendant's residence in 2007. Detective Barnes testified that he did not remember where the gray sweatshirt was found, but that the two other sweatshirts were taken from a closet that was being used by two boys that were living with Defendant in the residence at the time. This testimony is insufficient

to connect the sweatshirts to Defendant. Moreover, B.A. was not asked to identify any of the sweatshirts as being worn by his assailant, and the sweatshirts were not otherwise identified as belonging to or being worn by Defendant. Thus, the sweatshirts recovered from Defendant's home were not sufficiently connected to Defendant such that they were relevant to the present case. The district court abused its discretion by admitting the three sweatshirts into evidence.

**The Video Camera**

{16}     Detective Barnes testified that the police came to possess a video camera belonging to Defendant, at some point after Defendant's arrest in 2007. There was no testimony regarding when the camera was discovered or how it was identified as belonging to Defendant. There was no direct evidence that Defendant possessed the camera in 2003, and B.A. was not asked to identify the camera as the camera used in the crimes committed against him. Nor was there circumstantial evidence to purportedly link the video camera to the crimes committed. B.A.'s testimony—that a video camera was used by his assailant, and the detective's testimony—that police came to possess a camera belonging to Defendant four years later is not relevant to show that Defendant used the video camera in perpetrating the crimes charged in the present case.

9

**{17}** In sum, we conclude that the gun evidence and glasses were properly admitted and that the sweatshirt evidence and the video camera were not. We must now determine whether the improperly admitted evidence is grounds for a new trial or whether the error was harmless. *See State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110.

**Harmless Error**

**{18}** "Improperly admitted evidence is not grounds for a new trial unless the error is determined to be harmful." *Id.* Violations of the Rules of Evidence are considered non-constitutional error for the purpose of harmless error analysis. *State v. Marquez*, 2009-NMSC-055, ¶ 20, 147 N.M. 386, 223 P.3d 931, *overruled on other grounds by Tollardo*, 2012-NMSC-008. Non-constitutional error is harmless only if "there is no reasonable probability the error affected the verdict." *Tollardo*, 2012-NMSC-008, ¶ 36 (emphasis, internal quotation marks, and citation omitted). "[H]armless error review necessarily requires a case-by-case analysis [of] whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Id.* ¶ 44 (emphasis, internal quotation marks, and citation omitted). In determining whether the impermissible evidence contributed to Defendant's conviction, we must "evaluate all of the circumstances surrounding the error[,]" which may include an examination of the source of the error, the emphasis placed upon the error, and the properly admitted

10

evidence, at least to the extent such evidence provides "context for understanding how the error arose and what role it may have played in the trial proceedings." *Id.* ¶ 43.

{19} Here, there is no reasonable probability that the admission of the sweatshirt and camera affected the jury's verdict. In stark contrast to the sweatshirt and camera evidence, the State solidly proved the likely use of the handgun and, more importantly the State called five witnesses and devoted nearly two days of the trial to testimony that established that Defendant's DNA profile matched the DNA profile of the semen on B.A.'s shorts. The State presented the testimony of three witnesses regarding the 2003 investigation and the collection of physical evidence related to B.A.'s assault, and the testimony of two witnesses concerning the medical examinations performed and the medical treatment provided to B.A. after the assault. The State presented B.A.'s testimony that gave context to and corroborated the State's other evidence and played a significant role in the case against Defendant. In court, B.A. identified Defendant as his assailant. B.A. also testified that it was Defendant who approached him as he walked home, insisted on B.A.'s help and even offered B.A. money for his help. B.A. provided a detailed account of Defendant's actions of fondling and penetrating him. B.A. also provided details of these actions during his medical examination on the day of the assault and at his safehouse interview. B.A. further testified about his inability to remove himself from the situation until Defendant

finished the sexual assault. In light of the relatively small role the evidence played in the State's case as a whole, we conclude that its admission was harmless.

**Cumulative Error**

{20}    Defendant also argues that the erroneous admission of evidence amounted to cumulative error that deprived him of a fair trial. "The doctrine of cumulative error applies when multiple errors, which by themselves do not constitute reversible error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial." *State v. Roybal*, 2002-NMSC-027, ¶ 33, 132 N.M. 657, 54 P.3d 61. Cumulative error "requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial. This doctrine is to be strictly applied, and . . . cannot [be] invoke[d] . . . if the record as a whole demonstrates that [the defendant] received a fair trial." *State v. Woodward*, 1995-NMSC-074, ¶ 59, 121 N.M. 1, 908 P.2d 231 (internal quotation marks and citation omitted), *abrogated by State v. Montoya*, 2014-NMSC-032, 333 P.3d 935. Reviewing the record in this case and for the reasons explained above, we conclude that the cumulative affect of the improperly admitted video camera and sweatshirt evidence was slight, and that it did not deprive Defendant of a fair trial.

**Double Jeopardy**

12

{21} Defendant argues that his convictions for kidnapping and CSPM violate the prohibition against double jeopardy. "A double jeopardy challenge is a constitutional question of law which we review de novo." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. The Fifth Amendment of the United States Constitution, made applicable to New Mexico by the Fourteenth Amendment, prohibits double jeopardy and "functions in part to protect a criminal defendant against multiple punishments for the same offense." *Id.* (internal quotation marks and citation omitted). Double jeopardy cases involving multiple punishments are classified as either double-description cases, "where the same conduct results in multiple convictions under different statutes" or unit-of-prosecution cases, "where a defendant challenges multiple convictions under the same statute." *Id.* The present case is a double-description case because Defendant challenges two convictions under different statutes for what he claims is the same conduct.

{22} Double-description cases involve a two-part analysis. *See Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. First, we consider whether the conduct underlying the offenses was unitary. *See id.*; *see also Swick*, 2012-NMSC-018, ¶ 11; *State v. Melendrez*, 2014-NMCA-062, ¶ 7, 326 P.3d 1126. If the conduct is not unitary, there is no double jeopardy violation. *Swafford*, 1991-NMSC-043, ¶ 28.

If the conduct is unitary, we must determine "whether the [L]egislature intended to create separately punishable offenses." *Id.* ¶ 25.

**{23}** "Conduct is not unitary if sufficient indicia of distinctness separate the transaction into several acts." *State v. Montoya*, 2011-NMCA-074, ¶ 31, 150 N.M. 415, 259 P.3d 820 (internal quotation marks and citation omitted). "Distinctness can be established by looking to the quality and nature of the acts, the objects and results involved, and the defendant's mens rea and goals during each act." *State v. Dominguez*, 2014-NMCA-064, ¶ 8, 327 P.3d 1092 (internal quotation marks and citation omitted). "[R]eviewing whether conduct is unitary in the double jeopardy context, we indulge in all presumptions in favor of the verdict." *State v. Herrera*, ___-NMCA-___, ¶ 12, ___ P.3d ___, 2015 WL 5174133 (Sept. 3, 2015) (internal quotation marks and citation omitted).

**{24}** In addition, to B.A. identifying Defendant as his assailant, B.A. also testified that Defendant approached him as he was walking home from school in 2003. Defendant told B.A. that someone had broken his skateboard and asked B.A. to help him write "Matt sucks" under a bridge nearby as retaliation. B.A. testified that he told Defendant he did not want to help, but Defendant "kept persisting, persisting, persisting." Defendant also offered B.A. money to help him write under the bridge. Eventually, B.A. gave in and followed Defendant into an arroyo under the bridge.

14

Once under the bridge, Defendant asked B.A. to "moon" a camera to really get back at the people who broke his skateboard. B.A. testified that he resisted, but felt that even saying "No," he was trapped and there was no way for him to get out of the situation. B.A. pulled down his pants to flash his backside to the camera. Defendant told B.A. to pull his shirt up over his eyes so that he could not see.

{25} Defendant put the camera away. B.A. testified "[a]nd that's when he applied some kind of [lubricant] to, I don't know, basically fondle me, I guess you can say [I know] it sounds filthy, but he kind of lubed up my butt." Defendant was behind B.A. and B.A. was crouched over with his hands either on his knees or with his feet on the ground. Defendant fondled B.A.'s scrotum and penis. B.A. felt something inserted into his anal cavity. Defendant was grasping B.A. by the hips. B.A. cried out and yelled, "[w]hy are you doing this[?]" B.A. tried to pull free, but Defendant said that he had a gun and pulled the gun from his backpack.

{26} At some point during the encounter, Defendant peeked out from the tunnel under the bridge and told B.A. to put his clothes back on. According to B.A., a boy whom B.A. perceived to be a student, walked past them, through the tunnel. Defendant waited for the boy to pass through. B.A. testified that he was afraid to say anything or to flee because he did not know if Defendant would use the gun to harm him or the boy. After the boy went through the arroyo, Defendant continued the

15

assault, "pulling [B.A.'s] pants down and finishing up." B.A. testified that during the assault, his hands were flat on the ground with Defendant's hands directly on top of his, so that he could not move. After Defendant "finished up," he told B.A. to pull his pants up, threw some money down, and told him to count to 300 before leaving.

{27} With regard to the kidnapping charge, the jury was instructed that in order to convict Defendant of kidnapping, it must find that Defendant "took[,] restrained[,] confined[,] or transported [B.A.] by force[,] intimidation[,] or deception" and that Defendant intended to "hold [B.A.] against [his] will to inflict death, physical injury[,] or a sexual offense on [him]." Defendant argues that CSPM, by definition, includes some force or restraint and that in this case the force or restraint associated with the CSPM is indistinguishable from that associated with the kidnapping. Therefore, being sentenced for both crimes violates his right to be free of double jeopardy. We disagree.

{28} "The crime of kidnapping is complete when the defendant, with the requisite intent, restrains the victim, even though the restraint continues through the commission of a separate crime." *Dominguez*, 2014-NMCA-064, ¶ 10. Our Supreme Court has recognized that kidnapping by deception "can occur when an association [between a victim and a defendant] begins voluntarily but the defendant's actual purpose is other than the reason the victim voluntarily associated with the defendant."

16

*State v. Jacobs*, 2000-NMSC-026, ¶ 24, 129 N.M. 448, 10 P.3d 127; *accord State v. Sanchez*, 2000-NMSC-021, ¶ 32, 129 N.M. 284, 6 P.3d 486; *see also State v. Laguna*, 1999-NMCA-152, ¶¶ 2, 13, 128 N.M. 345, 992 P.2d 896 (stating that a teenage victim was kidnapped by deception where he associated with the offender under false pretenses). "[T]he key to finding the restraint element in kidnapping, separate from that involved in criminal sexual penetration, is to determine the point at which the physical association between the defendant and the victim was no longer voluntary." *Jacobs*, 2000-NMSC-026, ¶ 24.

{29}    In this case, B.A. testified that he reluctantly agreed to accompany Defendant into the arroyo based on Defendant's story about the broken skateboard and request for help writing something under the bridge. According to B.A.'s testimony, once the two were alone in the arroyo, Defendant did not mention writing anything under the bridge. Instead, Defendant asked him to "moon" the camera and that even though B.A. resisted, he knew he was "not getting out of the situation." This evidence supports a finding that B.A. was kidnapped by deception when Defendant lured him into the arroyo. *See State v. McGuire*, 1990-NMSC-067, ¶ 10, 110 N.M. 304, 795 P.2d 996 (determining that the jury may infer, from evidence of a later sexual assault, that the defendant had the necessary criminal intent at the time the victim was first restrained).

17

**{30}** The elements of kidnapping by force were satisfied by the evidence that Defendant pulled out his gun during the sexual assault. Defendant argues that because the use of the gun occurred contemporaneously with the sexual assault, it was not distinct from the sexual assault. We acknowledge that some degree of force is inherent in CSP or CSPM. *State v. Pisio*, 1994-NMCA-152, ¶ 28, 119 N.M. 252, 889 P.2d 860. However, a defendant's culpability increases with force or restraint that is beyond that inherent in or is distinct from that used in the sexual assault. *Id.*

**{31}** Here, B.A. testified that during the sexual assault, Defendant restrained him by grasping onto his hips and by holding his hands down and that Defendant did not produce the gun until B.A. cried out and attempted to get free. This testimony provided a sufficient basis to determine that the force element of kidnapping was satisfied by Defendant's use of the handgun and that the restraint element of CSPM was satisfied by evidence that Defendant held Victim's hips and hands. Viewed in this way, it is reasonable to conclude that Defendant's purpose in using the handgun was to force Victim not to flee, whereas his purpose for holding Victim's hips was to physically restrain Victim in order to perpetrate the CSPM. *State v. Saiz*, 2008-NMSC-048, ¶ 30, 144 N.M. 663, 191 P.3d 521 ("Distinctness may be established by determining whether the acts constituting the two offenses are sufficiently separated by time or space, looking to the quality and nature of the acts, the objects and results

18

involved, and the defendant's mens rea and goals during each act."), *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783.

{32} Based on B.A.'s testimony that he knew he was not going to be able to get out of the situation and that he was afraid to say anything or flee when the boy walked passed him in the arroyo, the jury also could have found that B.A. was kidnapped by intimidation. It is not clear which alternative the jury relied on in reaching its verdict—kidnapping by force, intimidation, or deception. Under any of the three alternatives, Defendant's conduct was factually distinct from the conduct supporting the CSPM conviction and was not unitary. Thus, we conclude that Defendant's convictions for kidnapping and CSPM do not violate double jeopardy, and we need not proceed to the second part of the *Swafford* analysis.

**Sufficiency of the Evidence**

{33} Defendant also claims that the State presented insufficient evidence to support his convictions for kidnapping and sexual exploitation of a minor. When reviewing sufficiency of the evidence, we must "determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Dowling*, 2011-NMSC-016, ¶ 20, 150 N.M. 110, 257 P.3d 930 (internal quotation marks and citation omitted). In doing so, we "view the evidence in the light most

favorable to the [s]tate, resolving all conflicts and indulging all permissible inferences in favor of the verdict." *State v. Reed*, 2005-NMSC-031, ¶ 14, 138 N.M. 365, 120 P.3d 447.

**Kidnapping**

{34} As we noted previously, in order to convict Defendant of kidnapping, the jury had to find that Defendant "took[,] restrained[,] confined[,] or transported [B.A.] by force[,] intimidation[,] or deception" and that Defendant intended to "hold [B.A.] against [his] will to inflict death, physical injury[,] or a sexual offense on [him]." Defendant claims that there is insufficient evidence to support a kidnapping conviction, separate from the sexual assault. More specifically, Defendant argues that the restraint or force supporting the kidnapping charge occurred simultaneously with and was incidental to the sexual assault and cannot, therefore, be the basis of the kidnapping conviction. This analysis overlaps somewhat with our analysis of Defendant's double jeopardy argument. *See Dominguez*, 2014-NMCA-064, ¶ 4 ("[O]ur resolution of [the d]efendant's double jeopardy argument is largely determinative of his insufficiency of the evidence argument. Indeed, in the context of combined kidnapping and sexual offense convictions, these two areas of law have generated considerable analytical overlap in our case law.").

20

{35} With regard to incidental force or restraint, this Court has held that force or restraint of a victim that is merely incidental to another crime is not separately punishable as kidnapping. *State v. Trujillo*, 2012-NMCA-112, ¶¶ 6-8, 289 P.3d 238, *cert. quashed*, 2015-NMCERT-003, 346 P.3d 1163. The determination of whether conduct is incidental is fact dependent and based on the totality of the circumstances. *Trujillo*, 2012-NMCA-112, ¶¶ 42-43. Factors that have been considered "whether a defendant intended to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime[,]" whether the force or restraint subjected the victim to a "risk of harm over and above that necessarily present in the other crime," and whether the force or restraint is "of the kind inherent in the nature of the other crime" or whether it has "some significance independent of the other crime in that it makes the other crime substantially easier [to commit] or substantially lessens the risk of detection." *Id.* ¶¶ 34, 36-37, 39 (alterations, internal quotation marks, and citations omitted). Although we have not adopted a specific test to determine whether a defendant's conduct is incidental to another crime, the ultimate question is "whether the restraint or movement increases the culpability of the defendant over and above his culpability for the other crime." *Id.* ¶ 38.

{36} B.A. testified that Defendant showed him the gun in response to his cries and attempts to get free. B.A. also testified that he did not try to escape or say anything to the boy in the arroyo knowing that Defendant had a gun, because B.A. did not want to "take chances" with the boy's life or his own. As we concluded above, Defendant's use of the gun was not the type of force inherent in sexual assault. Threatening B.A. with a firearm had significance independent from the sexual assault in that it deterred B.A. from resisting or seeking help. The presence of the gun also significantly increased the risk of harm to B.A. beyond that present in the sexual assault. We conclude that Defendant's use of the gun increased his culpability over and above his culpability for the sexual assault, and it was not incidental to the CSPM. Therefore, the kidnapping and CSPM in this case are separately punishable.

{37} Defendant further argues that there is insufficient evidence to support kidnapping by deception because there is no evidence that he deceived B.A. with the intent to commit a sexual offense against him. As we previously concluded, the evidence supports a finding that Defendant lured B.A. to the arroyo by deception. The evidence that Defendant sexually assaulted B.A. once they were alone under the bridge supports the inference that Defendant intended to sexually assault B.A. at the time Defendant convinced B.A. to follow him. *See McGuire*, 1990-NMSC-067, ¶ 10 (determining that the jury may infer, from evidence of a later sexual assault, that the

defendant had the necessary criminal intent at the time the victim was first restrained). Accordingly, we reject Defendant's argument that there was not sufficient evidence of deception and force, independent of the force used during the CSPM to support Defendant's kidnapping conviction.

**Sexual Exploitation of a Child**

{38}     Defendant was convicted of sexual exploitation of a child in violation of NMSA1978, Section 30-6A-3(C) (2001, amended 2007). The jury was instructed that to find Defendant guilty of sexual exploitation of a child, it must find that Defendant "intentionally caused or permitted [B.A.] to engage in a prohibited sexual act or simulation of such an act" and that Defendant "knew or had reason to know or intended that the act be recorded in any obscene visual or print medium or performed publicly." Defendant argues that since B.A. testified at trial that after he "mooned" the camera, Defendant "put it away," there is insufficient evidence that Defendant knew or intended that a prohibited act be recorded. We disagree. Based on the evidence presented at trial, the jury could have found that the sexual assault on B.A. constituted a prohibited act, and that Defendant knew or intended that the sexual assault be recorded.

{39}     The jury was instructed that a prohibited sexual act means: "sexual intercourse, including genital-genital, oral-genital, anal-genital[,] or oral-anal . . .[,] or

23

masturbation." At trial, B.A. testified that he believed that the "insertion" he felt during the assault was digital penetration, though he could not be sure. B.A. also testified that during the medical examination on the day of the assault and during the safehouse interview, he reported that the penetration was genital. Additionally, B.A. testified that during the penetration Defendant restrained him by grasping him by the hips and by holding his hands down. B.A. stated that his hands were flat on the ground and Defendant's hands were on top of his hands, pressing them down. Based on this testimony, the jury could have concluded that Defendant caused B.A. to engage in anal-genital intercourse—a prohibited act under the statute.

{40} Defendant also argues that there is insufficient evidence that he knew or intended that the prohibited act be "recorded in any obscene visual or print medium or performed publicly." The jury was instructed that obscene material is "any material, when the content if taken as a whole: (1) appeals to a prurient interest in sex, as determined by the average person applying contemporary community standards; (2) portrays a prohibited sexual act in a patently offensive way; and (3) lacks serious literary, artistic, political[,] or scientific value." The jury was also instructed that "visual or print medium" is: "(1) any film, photograph, negative, slide, computer diskette, videotape, videodisc[,] or any computer or electronically generated imagery; or (2) any book, magazine[,] or other forms of publication or photographic

24

reproduction containing or incorporating any film, photograph, negative, slide, computer diskette, videotape, videodisc[,] or any computer generated or electronically generated imagery."

{41} The State contends that a police report, introduced by Defendant at trial, contains a statement B.A. gave on the date of the incident that Defendant said he recorded the sexual assault. The report, which was written by Officer Drobik of the Albuquerque Police Department, was introduced by defense counsel during questioning related to the description B.A. gave of his assailant on the day of the assault. The State stipulated to the report's admission, and the report was admitted into evidence without objection or limitation.

{42} The report contains statements B.A. made to Officer Drobik regarding the series of events leading up to, during, and after the sexual assault. The report states in pertinent part:

> [B.A.] advised [that] the male stood behind him and put a lubrication on his "part." [B.A] advised [that] the male "did it" for [about fifteen] minutes. The male had a video camera and told [B.A.] that he had taped the incident. The male told [B.A.] that he would show it to his friends if he told anyone.

Defendant points out that at trial, B.A. testified that Defendant put the camera away after B.A. "mooned" it and before "the rest of it happened." However, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the

verdict, we conclude that the jury could have found, based on the report and B.A.'s testimony, that Defendant recorded the sexual assault, in an obscene visual medium as defined in the jury instructions. *See State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." (internal quotation marks and citation omitted)); *State v. Bennett*, 2003-NMCA-147, ¶ 20, 134 N.M. 705, 82 P.3d 72 (stating that where conflicting evidence is presented at trial, it is the role of the jury as fact-finder to resolve the conflicts in the evidence). We conclude that sufficient evidence was presented to support Defendant's conviction for sexual exploitation of a child.

**Firearm Enhancements**

{43} The firearm enhancements in this case are governed by NMSA 1978, Section 31-18-16 (1993). Pursuant to Section 31-18-16(A), "[w]hen a separate finding of fact by the [fact-finder] shows that a firearm was used in the commission of a noncapital felony, the basic sentence of imprisonment prescribed for the offense . . . shall be increased by one year[.]" Section 31-18-16(C) provides that "[i]f the case is tried before a jury and if a prima facie case has been established showing that a firearm was used in the commission of the offense, the court shall submit the issue to the jury by special interrogatory."

**{44}** In accordance with Section 31-18-16(C), the jury in this case was provided with special verdict forms pertaining to Defendant's use of a firearm in the commission of kidnapping and sexual exploitation of a child, respectively. The jury found that Defendant had used a firearm in committing both crimes. On appeal, Defendant challenges the sufficiency of the evidence supporting these special verdict findings and seeks reversal of the firearm enhancements to his sentences for kidnapping and sexual exploitation of a child.

**{45}** Concerning the enhancement to the kidnapping sentence, Defendant argues that any use of the gun was incidental to the CSPM and should not be used to enhance the crime of kidnapping. However, because we previously determined that Defendant's use of the gun was not incidental to the CSPM, we find this argument unpersuasive. The firearm enhancement applies where the jury finds that a firearm was used in the commission of a noncapital felony. NMSA 1978, § 31-18-16 (1993). As we discussed above, the jury in this case could have reasonably found that Defendant used the firearm to complete the crime of kidnapping. As to the firearm enhancement of the sentence for sexual exploitation of a child, Defendant bases his challenge on his assertion that the evidence does not show that the sexual assault was recorded. This argument is also without merit. In light of B.A.'s testimony that the gun was used during the sexual assault, and Officer Drobik's report indicating that Defendant

27

recorded the assault, the jury could have concluded that the gun was used in the sexual exploitation of B.A. Having rejected Defendant's arguments, we see no basis for vacating the challenged firearm enhancements.

**CONCLUSION**

{46} For the foregoing reasons, we affirm Defendant's convictions and uphold the firearm enhancements to his sentences.

{47} **IT IS SO ORDERED.**

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

**JONATHAN B. SUTIN, Judge**

**LINDA M. VANZI, Judge**